**Jack E. MILLER et al., Plaintiffs,**

v.

**CENTRAL CHINCHILLA GROUP, INC., et al., Defendants,**

**Mills County State Bank, Additional Defendant.**

**Civ. No. 10-227-C-1.**

United States District Court,
S. D. Iowa.

March 21, 1975.

James Shipman, Stephen J. Holtman, Simmons, Perrine, Albright & Ellwood, Cedar Rapids, Iowa, for plaintiffs.

Roy M. Irish, Des Moines, Iowa, for defendants Hillis Akin and Edna H. Akin.

F. Richard Lyford and Arthur F. Owens, Des Moines, Iowa, for defendants Barbara McLuen & Dawn Mist Chinchilla, Inc.

Robert E. Konchar and Michael P. Donohue, Cedar Rapids, Iowa, for defendant Mills County State Bank.

Central Chinchilla Group, Inc., defendant not represented.

## ORDER

STUART, District Judge.

This matter is before the Court on motion of the named plaintiffs requesting the maintenance of a class action. The motion was filed on January 24, 1975. To date only one defendant, Mills County State Bank (the Bank), has resisted. Since the time for resistance has expired as to all defendants, the Court has elected to treat the matter as under submission.

The original complaint in this action was filed on March 9, 1971, naming Central Chinchilla Group, Inc. (Central); Dawn Mist Chinchilla, Inc. (Dawn); Hillis and Edna Akin; John Milligan; and Barbara McLuen as defendants. Counts I through X charged Central and Dawn with violation of §§ 12(1), 12(2), and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l*(1), 77*l*(2), and 77q; § 10b of the Securities Exchange Act of 1934; 15 U.S.C. § 78j(b); and common law fraud. Count XI charges the Akins, John Milligan, and Barbara McLuen with liability as "control persons" pur-

suant to § 15 of the 1933 Act; 15 U.S.C. § 77o, and § 20 of the 1934 Act; 15 U.S.C. § 78t. In an amendment to the complaint, filed May 15, 1973, the Bank was added as a defendant and charged with liability for violating § 17 of the 1933 Act and § 10(b) of the 1934 Act.

Although F.R.Civ.P. 23(c)(1) requires that such a determination be made as soon after commencement of an action as practicable, it has been some four years since the commencement of this action and the Court has not, until today, determined whether it may so proceed. In part this has been due to the rather involved procedural history of the case, in part to the turnover in counsel, and, perhaps, in part to the effect of proceedings involving the parties hereto collateral to this lawsuit. Regardless of its cause, though, the delay between initiation of this action and the instant ruling has had at least one salutary effect. Throughout its four year life the action has been vigorously prosecuted by all parties and the Court is in a position to consider not only the original pleadings in this case, but the numerous interrogatories and affidavits on file, the testimony of witnesses at the various hearings that have been held, and the extensive briefs filed by counsel on various issues, as well. The Court is thus better able to make the class action determination now than if it were to act in the relative vacuum in which most such decisions are made. See Kronenberg v. Hotel Governor Clinton, Inc. (S. D.N.Y., 1966), 41 F.R.D. 42, 44–45.

Rule 23(a) requires, as prerequisites to the maintenance of any class action, that the class is so large that joinder of all members is impracticable, that there are questions of law or fact common to the class, that the claims of the representative parties are typical, and that the representative parties will fairly and adequately protect the interests of the class. The Bank claims that, as to it at least, none of the conditions are met. The Court cannot agree.

■■ It appears from the testimony of Richard Y. Barnes and others that each purchaser of chinchilla producer contracts whose account was serviced by the Bank received a so-called "welcome" letter, a letter which is a crucial element of the claims against the Bank. According to the Bank's answer to plaintiffs' interrogatory 12(d) the size of this potential class may be as large as 312 persons. Further, in so far as the complaint alleges that the Bank conspired with or aided and abetted the other defendants, the class of plaintiffs with claims against it would seem to be coextensive with the class claiming against the others. The answers of Jack and Janet Miller and E. Wayne and Donna Mae Riley to interrogatory 1 of defendants Barbara McLuen and Dawn indicate that they know of at least 57 people who are similarly situated with respect to those claims. In addition to the answers to the McLuen-Dawn interrogatory, the affidavits of plaintiffs' attorneys attest to their belief that the class of plaintiffs ranges in size from 100 to over 500, and suggest that potential plaintiffs may possibly reside in a rather extensive geographic area. See Exhibits "A"—"U", Affidavit of James E. Shipman, filed October 1, 1974. While the Bank correctly observes that numbers, in and of themselves, are not controlling, the Court is of the opinion that the class of plaintiffs is potentially large enough and of a sufficiently wide geographic distribution to satisfy Rule 23(a)(1) as to all defendants. See, e.g., Korn v. Franchard Corp. (2d Cir., 1972), 456 F.2d 1206, 1209 (70 members); Esplin v. Hirschi (10th Cir., 1968), 402 F.2d 94, 101, cert. denied (1969), 394 U.S. 928 (200 members); 3B J. Moore, Federal Practice ¶ 23.05 (1974).

■ The Bank also contends that there are no questions of law or fact common to the class. A review of its argument, however, suggests the Bank has confused the requirement of Rule

23(a)(2) with that of Rule 23(b)(3) that such common issues predominate. See Korn v. Franchard Corp., supra, 456 F.2d, at 1210. In so far as each potential class member purchased chinchillas and producer contracts from Dawn or Central there are common questions of fact as to the defendants other than the Bank. Thus, maintenance of a class action against them would not offend Rule 23(a)(2). Nor would it offend the Rule to allow maintenance of such an action against the Bank, for the amended complaint charges the Bank with conspiracy and aiding and abetting various violations of the securities laws by the other defendants. The scope and nature of the Bank's involvement in the other defendants' scheme, irrespective of the Bank's involvement with any individual plaintiff, pose sufficient common questions to satisfy Rule 23(a)(2).

■ Finally, the Bank challenges the typicality of the claims of the named plaintiffs and asserts that they will not fairly and adequately protect the interests of the class. Rule 23(a)(3)'s requirement that the claims of the representative parties be typical of those of the class does not pose a very substantial barrier to maintenance of a securities fraud class action. Indeed, some courts have construed the requirement of typicality as demanding only "that the representatives must not have interests antagonistic to or in conflict with those they seek to represent". E.g., Cannon v. Texas Gulf Sulphur Co. (S.D. N.Y.,1969), 47 F.R.D. 60, 63. Here the named plaintiffs include chinchilla purchasers from both Dawn and Central and customers of the Bank. While it may be true, as the Bank argues, that plaintiff Jack Miller is the only purchaser who received a "welcome" letter *prior* to purchasing chinchillas, this atypicality does not destroy his status as a representative. Apparently the Bank still clings to the position that reliance on its "welcome" letter as an inducement to purchase must be shown before any

chinchilla breeder can recover from it. Were this true, perhaps Miller's unique position would be significant. In its Order of January 22, 1975, denying the Bank's motion for summary judgment, however, the Court concluded that the Bank might possibly be liable as a principal or an aider and abetter to any person who purchased chinchillas from Dawn or Central and whose contract was serviced by the Bank, regardless of when he received a "welcome" letter. Accordingly, Miller, as a purchaser whose contract was serviced by the Bank, is a typical class member for the purpose of Rule 23(a)(3).

Since the Court is of the opinion that the named plaintiffs do have typical claims, it is unimpressed with the Bank's statement that their atypicality is such that they cannot fairly and adequately protect the interests of the class. F.R.Civ.P. 23(a)(4). The named plaintiffs and their counsel have diligently conducted this lawsuit for an extended period and their actions bear moot testimony to the insubstantiality of the Bank's contention. The Court finds that the interests of the class are being fairly and adequately protected by the representative parties.

Having determined that all four requirements of Rule 23(a) have been satisfied, the Court must next determine whether one of the three conditions set forth in Rule 23(b) is met. In their motion plaintiffs request that the action be allowed to proceed under Rule 23(b)(3) which requires that the questions of fact or law common to the members of the class predominate over individual questions and that a class action be superior to other available methods of resolving the controversy between the class and the various defendants.

In the context of securities fraud litigation, courts have had little difficulty finding common questions predominant where defendants have acted in furtherance of a common scheme on grounds generally applicable to the class as a

whole. E.g., *Korn v. Franchard Corp.*, *supra*; *Green v. Wolf Corp.* (2d Cir., 1968), 406 F.2d 291, cert. denied (1969), 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766; *Lamb v. United Security Life Co.* (S.D. Iowa, 1972), 59 F.R.D. 25; *Siegel v. Realty Equities Corp.* (S.D.N.Y., 1972), 54 F.R.D. 420. As the Advisory Committee observed in its comment about the 1966 amendment to Rule 23: "[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Advisory Committee's Note to Proposed Rule 23, 39 F.R.D. 69, 103 (1966).

The scheme employed by the defendants in this action does not fit the classical mold, however. From the plaintiffs' answers to various interrogatories and from the affidavits of certain persons not parties hereto it appears that the vast preponderance of the sales efforts directed at the potential class members, and hence the bulk of the misrepresentations and omissions alleged, were made orally, by defendants' sales agents, on an individualized basis.[1] See E. Wayne and Donna Mae Riley's answers to interrogatories of Central, Nos. 7, 27; E. Wayne and Donna Mae Riley's answers to interrogatories of Dawn, Nos. 7, 27; Affidavit of Melvin H. and Mary H. Sheffler, filed September 27, 1974; Affidavit of James W. and Janice F. Wyant, filed October 2, 1974. No written materials were given to potential purchasers until after the purchase decision was made. E. Wayne and Donna Mae Riley's answers, *supra*, No. 28 (Central), No. 27 (Dawn); E. Wayne and Donna Mae Riley's answers to interrogatories of the Bank, No. 14; Jack E. and Janet K. Miller's answers to interrogatories of the Bank, Nos. 15, 18.

In such a situation, where the challenged misinformation was disseminated orally rather than in writing, class action treatment has been held inappropriate on the ground that, since oral misrepresentations are substantially more susceptible of material variation than written misrepresentations, there is no predominance of common issues with respect to such oral misrepresentations, even when there is some degree of similarity among the misrepresentations made. *Goldstein v. Regal Crest, Inc.* (E.D.Pa., 1973), 59 F.R.D. 396, 401–02; *Moscarelli v. Stamm* (E.D.N.Y., 1968, 288 F.Supp. 453, 462–63. As the Advisory Committee observed: "[A]lthough having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed." Advisory Committee's Note to Proposed Rule 23, *supra*.

This is such a case. Although the complaint alleges that the misrepresentations made to each purchaser were materially consistent, all the defendants who have answered have denied this allegation. Accordingly, there is a genuine factual dispute as to the consistency of the information furnished to each purchaser. Such cases as *Frankel v. Wyllie & Thornhill, Inc.* (W.D.Va., 1972), 55 F.R.D. 330, and *Vernon J. Rockler and Co. v. Graphic Enterprises, Inc.* (D. Minn., 1971), 52 F.R.D. 335, involving

---

1. It appears from the same data that one more or less standardized communication was made to some of the potential plaintiffs. Defendant Hillis Akin appeared on a locally broadcast television show in Cedar Rapids, Iowa and discussed chinchilla breeding and marketing. There is no indication in the record of how many individuals actually saw the show or what effect it had on those who did—issues unique to each possible plaintiff. In so far as the legal effect of the television show might present a common question, at least as to those who saw it, the program is a factor to be considered in making the predominance determination. Since the Court is of the opinion that it raises as many individual questions as common ones, however, its significance is discountable.

oral statements which were part of an established "consistent pattern of fraud and deceit" or which were merely ancillary to misstatements and omissions made in contemporaneous written documents are thus inapplicable.

It has been recognized in cases such as Esplin v. Hirschi, supra, that different treatment should be accorded oral omissions than oral misrepresentations, with class action status more readily accorded to cases involving the former than the latter. 402 F.2d at 99. Since the complaint alleges both omissions and misrepresentations, *Esplin* might arguably mandate class treatment notwithstanding the oral nature of the communications between the defendants and their customers. A close examination of the alleged omissions in this case, however, reveals that they are merely the converse of the misrepresentations charged. Every misrepresentation involves an omission to some extent, if only an omission to state the truth of the matter misrepresented. Such are the omissions alleged in this complaint. *Esplin*, if it is to be reconciled with *Goldstein* and *Moscarelli*, must have anticipated omissions of a substantially more independent character, and thus *Esplin* is inapplicable to the instant case.

■ Much of what has been said with respect to predominance is applicable directly to all the defendants except the Bank. However, since the Bank's liability, if any, is primarily derivative in nature, predicated upon the existence of a scheme of securities law violations involving the other defendants, class action status as against it raises substantially the same problems posed by class status against the Akins, Milligan, McLuen, and their two companies. Since the Court is of the opinion that the oral nature of the communications between the other defendants and the potential plaintiffs is such that there is an insufficient commonality to justify class action treatment as to other defendants, it finds there is also such insufficient commonality with respect to the Bank.

The Court's conclusion that individual issues predominate with respect to all the defendants is strengthened by the unique nature of the "security" involved in this case. In Miller v. Central Chinchilla Group, Inc. (8th Cir., 1974), 494 F.2d 414, 417–18, the Court of Appeals for the Eighth Circuit indicated that the issue of whether the package sold each chinchilla breeder—the combination of breeding stock, equipment, and supposed repurchase agreements—was a security, and, thus, the issue of whether the Court has subject matter jurisdiction over plaintiffs' claims, turns on the nature of the representations made to each purchaser. In the absence of any demonstrable standardized communications, such as proxy solicitation materials, prospectuses, registration statements, or the like, the nature of the representations made is a factual question which must be answered on an individual basis, plaintiff by potential plaintiff. As to each individual purchaser, therefore, the Court must determine not only the content of the statements made to him, but also whether such statements satisfy the definition of security set forth by the Court of Appeals, whether such statements were material, and whether they were false and misleading. This is in addition to the need to make individualized determinations of reliance (at least in so far as it is not subsumed in the concept of materiality) and damages.

On the basis of these considerations, the Court is unable to conclude that common issues predominate. Accordingly, the requirement of predominance set forth in Rule 23(b)(3) is unsatisfied and plaintiffs' motion must be denied.

Denial of class action status raises the problem of how to protect the interest of potential class members whose claims may now be barred by the expiration of the statute of limitations. In American Pipe & Construction Co. v. Utah (1974),

414 U.S. 538, 552–53, 94 S.Ct. 756, 38 L.Ed.2d 713, the Court held that the filing of a class action complaint tolled the statute of limitations until such time as it was determined that a class action could not be maintained. *American Pipe & Construction* would seem to be controlling here, notwithstanding the fact that class-action status in this case is being denied for failure to satisfy. Rule 23(b)(3) rather than 23(a)(1). See Hellerstein v. Mather (D.Colo., 1973), 360 F.Supp. 473, 475. But see 3B J. Moore, Federal Practice, supra, ¶ 23.90[3], at 23–1654. Since the Court is not squarely faced with the necessity to decide whether the statute of limitations has expired as to any individual plaintiff, however, no opinion is expressed thereon. None the less, it would seem incumbent upon the Court to make some provision protecting the interests of potential members of the class. Rule 23(d)(2) authorizes a court, in the conduct of class actions, to make appropriate orders "requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given * * * of the opportunity of members * * * to intervene and present claims or defenses, or otherwise to come into the action".

Pursuant to this grant of authority, the Court hereby directs counsel for the plaintiffs to prepare a form of notice to those members of the class whose identities and addresses are presently known advising them of the Court's decision with respect to the maintenance of a class action and informing them that they shall have thirty days from the date of the mailing of the notice in which to petition the Court for leave to intervene in this action. A copy of said notice shall be submitted to the Court for its approval prior to transmittal thereof. Upon Court approval thereof, counsel for the plaintiffs shall cause such notice to be mailed by first class mail to all the individuals described above. The costs of preparing and mail-ing such notice shall be borne initially by the plaintiffs but shall be taxed as costs of this action. At the expiration of thirty-day period for intervention, the Order denying class action status in this case shall become effective. Accordingly,

It is hereby ordered that plaintiffs' motion requesting maintenance of a class action be denied, provided, however, that such denial shall be effective thirty days from the mailing of notice of leave to petition for intervention to those members of the class whose identities and addresses are presently known.

It is further ordered that counsel for the plaintiffs shall have thirty days from the date of this Order in which to prepare and submit a copy of said notice for approval by this Court.