Iris W. MILLS and James E. Mills, Plaintiffs,

v.

ROANOKE INDUSTRIAL LOAN AND THRIFT et al., Defendants.

Elizabeth NEILL and Martha Neill, Plaintiffs,

v.

ROANOKE INDUSTRIAL LOAN AND THRIFT et al., Defendants.

Civ. A. Nos. 74–166 and 74–253.

United States District Court
W. D. Virginia,
Roanoke Division.

Sept. 16, 1975.

Kenneth E. Trabue, Hunter, Fox & Trabue, Roanoke, Va., for Roy A. Young.

B. K. Cruey, W. F. Mason, Jr., Roanoke, Va., for plaintiffs.

Frederick T. Gray, Williams, Mullen & Christian, Chesterfield, Va., for defendants Roanoke Industrial Loan & Thrift, Beecher E. Stallard and Watson M. Marshall.

C. John Renick, King, Fulghum, Renick & Williams, Roanoke, Va., for defendant Robert C. Cessna.

Theodore H. Ghiz, Goah, Ghiz & Vealey, Charleston, W. Va., Evans B. Jessee, Roanoke, Va., for defendant Robert T. Baird.

Rudolph L. DiTrapano of DiTrapano, Mitchell, Lawson & Field, Charleston, W. Va., Robert A. Lowman, Radford, Va., for defendant D. N. McLaughlin.

William T. Lively, Jr., Lively, Light & Bias, Charleston, W. Va., David B. Hart, Eggleston & Glenn, Roanoke, Va., for defendants Emanuel A. Kostas, Nick Savas and Rexford White.

## OPINION

TURK, Chief Judge.

Pursuant to Fed.R.Civ.P. 42, the court has consolidated these two suits for the purpose of ruling on the various motions presently pending before the court. In both cases the named defendants are Roanoke Industrial Loan and Thrift ("Roanoke Industrial") and certain of its former officers, directors and employees and the two Receivers who were appointed by the Circuit Court of Chesterfield County, Virginia on January 3, 1974 to preserve the assets of Roanoke Industrial.

Briefly stated, in these complaints plaintiffs allege that the individual defendants who controlled Roanoke Industrial, prior to it being placed in receivership, made certain oral and written communications by use of the mail, radio, television, newspaper, etc. in order to induce them to invest in a savings plan. In response to this promotional campaign, some of the specifics of which plaintiffs have set forth in their complaint, the plaintiffs aver that they visited Roanoke Industrial offices in Roanoke and purchased what had been and was there, represented to them to be certificates of deposit. That thereafter, subsequent to Roanoke Industrial being placed in receivership, plaintiffs were informed that they had in fact purchased subordinated debenture notes. Plaintiffs contend that the representations and communications which induced them to purchase these subordinated debenture notes

were false and misleading and omitted material facts in violation of section 12(2) of the Securities Act of 1933, as amended, 15 U.S.C. § 77*l*. Plaintiffs further allege that the aforesaid actions of the defendants were in violation of section 17 of the Securities Act of 1933, 15 U.S.C. § 77q and section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78j and Rule 10b-5 promulgated pursuant thereto, 17 C.F.R. § 240.10B-5.

In No. 74-253 the plaintiffs seek damages of $15,000, the amount they paid for the subordinated debentures, with interest from October 1, 1973. In No. 74-166 the plaintiffs seek to represent the class of all holders of subordinate debenture notes of Roanoke Industrial and seek judgment in an amount equal to the total face value of all subordinate debentures issued by Roanoke Industrial to the class; or in the alternative, they ask that the court require the defendants (i. e. the Receivers) to treat the plaintiff class as depositors in Roanoke Industrial.

## ABSTENTION

The Receivers for Roanoke Industrial have moved for this court to abstain from exercising jurisdiction over this case because the corporation is in receivership in the Circuit Court of Chesterfield County, Virginia. They point out that the order of that court appointing them as receivers enjoined all persons from prosecuting suits against Roanoke Industrial without first obtaining permission of the court.

■ Although as a matter of comity permission should have been sought before this suit was instituted, there is no legal impediment to plaintiffs asserting their federal statutory rights in this forum. The law is well settled that:

"if the two suits are *in rem* or quasi *in rem*, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought,

the jurisdiction of one court must of necessity yield to that of the other. . . . the principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."

*Penn General Casualty Co. v. Pennsylvania,* 294 U.S. 189 at 195, 55 S.Ct. 386 at 389, 79 L.Ed. 850 at 855 (1935). *Accord, Kline v. Burke Construction Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). However, where one suit is *in rem*, as is the receivership proceeding in state court, and the other suit is *in personam*, it is equally well established that each court may exercise its concurrent jurisdiction independently of the other. *See Commonwealth Trust Co. of Pittsburg v. Bradford,* 297 U.S. 613, 56 S.Ct. 600, 80 L.Ed. 920 (1936); *Purcell v. Summers,* 126 F.2d 390 (4th Cir.), *cert. denied,* 317 U.S. 640, 63 S.Ct. 32, 87 L.Ed. 516 (1942). Under such circumstances, the state court could not enjoin plaintiffs from asserting their federal causes of action. *See* 1A J. Moore, Federal Practice § 0.222 at 2607-2613 (2d Ed.1974).

■ In the present case, plaintiffs' suit seeks joint and several liability against various individuals and Roanoke Industrial for alleged violations of the aforementioned federal security laws. There is no question as to plaintiffs' substantive federal rights to seek such relief in this court. As to the alleged violations of the 1933 Act, this court has concurrent jurisdiction with the state courts, 15 U.S.C. § 77v, and the alleged violations of the 1934 Act are within the exclusive jurisdiction of this court, 15 U.S.C. § 78aa. Plaintiffs' suit is *in personam*, and as noted above there is no limitation which would prohibit plaintiffs from proceeding in this forum.

Defendants abstention motion appears to be based on the fact that plaintiffs' suit would potentially affect the amount of funds now in the hands of the receivers to which they are entitled. This is, of course, true to the extent that they are successful in establishing their right

to be afforded the status of depositors, but plaintiffs are also seeking to establish the liability of the individual defendants who were responsible for the allegedly fraudulent misrepresentations. It is thus by no means clear on the present record what effect a change in plaintiffs' priority status would have on the receivership proceedings since plaintiffs are seeking to establish the joint and several liability of numerous individuals in addition to Roanoke Industrial. Even more fundamental, though is the fact that plaintiffs may be entitled as a matter of federal law to have Roanoke Industrial treat them as depositors, and for this court to abstain could have the effect of preventing plaintiffs from attempting to vindicate these rights. The rights which plaintiffs are here asserting are not the subject of the state receivership proceeding, and this court is of the opinion that the abstention doctrines have no application to this situation. Defendants motion to abstain is accordingly denied.

## CLASS ACTION

Iris and James Mills, the plaintiffs in No. 74–166, seek to represent all persons holding subordinate debenture notes of Roanoke Industrial. Plaintiffs assert that their suit satisfies the requirements of Fed.R.Civ.P. 23(a) and (b)(3). Certain of the defendants oppose class certification on various grounds which will be discussed below.

■ The four prerequisites to the maintenance of any class action are set forth in Rule 23(a) as follows:

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will adequately protect the interests of the class."

The remaining prerequisites to the certification of a class in this case are set forth in 23(b)(3) as follows:

"the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

Plaintiffs allege that the class they seek to represent consists of more than 300 members residing throughout Virginia and possibly other eastern states. Defendants have not specifically challenged this allegation on the basis of information presumably within their control, and the court is thus satisfied that the numerosity requirement of 23(a)(1) is satisfied for present purposes. *See Korn v. Franchard Corp.*, 456 F.2d 1206 (2d Cir. 1972).

The commonality requirement of 23(a)(2) will be considered in connection with the "predominance" requirement of 23(b)(3) since plaintiffs would necessarily have to satisfy 23(a)(2) in order to satisfy 23(b)(3).

■ Defendants contend that the plaintiffs are indebted to Roanoke Industrial in the amount of $10,000 and therefore their position as a debtor is in conflict with the claims of the proposed class. Although plaintiffs' status as a debtor of Roanoke Industrial may distinguish them from the proposed class members, this factor does not make their factual or legal position as subordinated debenture holders atypical of those of the class for purposes of the claims here asserted. The defendants do not specify how plaintiffs' debtor position conflicts

with the creditor claims of the proposed class, and the court does not perceive such a hypothetical conflict as affecting plaintiffs' status as class representatives. Plaintiffs' claims appear to be typical of those of other subordinate debenture holders who purchased such debentures in response to the promotional campaign, set forth in the amended complaint.

■ Defendants question whether plaintiffs will adequately represent the proposed class in two respects. Defendants argue that if plaintiffs were to succeed in changing their status from that of a subordinated debenture holder to a depositor they would probably recover their full deposit, but if all debenture holders (i. e. the proposed class) were to be afforded depositor status plaintiffs would not recover fully. It is further argued that if plaintiffs were to recover attorneys fees against the defendants, the funds available to depositors would be diminished. If plaintiffs were only suing Roanoke Industrial, it is true that relief for the proposed class, plus attorneys fees might diminish the limited assets available to depositors. However, plaintiffs are here seeking to establish the joint and several liability of numerous individuals as well as Roanoke Industrial. Plaintiffs' interests in this suit are precisely the same as those of other holders of subordinated debentures who responded to the promotional campaign described in plaintiffs' amended complaint, and in view of the numerous defendants, it is entirely possible that plaintiffs will be able to obtain the relief sought for themselves and the proposed class.

The most serious challenge to class certification in this case involves the requirements of Rule 23(b)(3). Defendants argue that factual and legal issues common to the proposed class will not predominate over individual questions. Defendants specifically contend that this case is not suited for a class action because the liability of the defendants to the individual class members will vary depending upon the sophistication of such individuals and their reliance on the allegedly unlawful communications. They also contend that individual differences among members of the proposed class with regard to the running of the statutes of limitation make class certification inappropriate.

■ Although there are undoubtedly individual differences in the communications which induced the members of the proposed class to purchase the subordinated debentures, plaintiffs have alleged what appears to have been a common scheme in the form of a promotional campaign which resulted in the sale of these securities. Whether this promotional campaign violated the various federal laws as alleged is the predominant issue. In 3B J. Moore, *Federal Practice* § 23.45[2] at 23–764–765 (2d ed.1974) the author states the standard which appears to be applicable to the present case:

"The 'domino theory' of fraudulent misrepresentation has been evolved, allowing purchasers of securities over an extended time period, during which several communications concerning the corporation's financial status may have been issued, to be represented in one class action. According to this formulation, the group of defrauded purchasers may constitute a class if the several misrepresentations were similar or interdependent in content, or if they were all issued as part of an integrated course of manipulative conduct by defendant. Having found that the class members' claims are grounded in one set of defendant's actions, courts view individual variations as unimportant; indeed, defendant's liability may depend predominantly on an elaboration of the background and history of the overall 'common scheme'." (footnotes omitted).

■ In addition, the issues of individual reliance are not paramount in this case. Plaintiffs' claim based on a violation of Section 12(2) of the Securities of Act of 1933, 15 U.S.C. § 77l(2) does not involve the element of individual reliance as such. As stated in *Johns Hop-*

kins University v. Hutton, 422 F.2d 1124 (4th Cir. 1970):

"Under Section 12(2) . . . a buyer need not prove that he relied on the misstatement or omission. 'To say that purchaser reliance is a prerequisite to seller liability is to import something into the statute which is not there.' Woodward v. Wright, 266 F.2d 108, 119 (10th Cir. 1959)." 422 F.2d at 1129.

The element of individual reliance is also not crucial with respect to plaintiffs' claims under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) and Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j and Rule 10–b–5 of the Securities and Exchange Commission, 17 C.F.R. § 240–10b–5. In the wake of Affiliated Ute Citizens v. United States, 406 U.S. 128, at 153–154, 92 S.Ct. 1456, at 1472, 31 L.Ed.2d 741, at 761–62 (1972) there is considerable doubt as to the degree of reliance, if any, necessary in Rule 10b–5 cases. E. g., Rochez Bros., Inc. v. Rhoades, 491 F.2d 402 (3d Cir. 1973); Chris-Craft Industries, Inc. v. Piper Aircraft Corp., 480 F.2d 341 (2nd Cir. 1973); Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc., 482 F.2d 880 (5th Cir. 1973); see Johns Hopkins University v. Hutton, 488 F.2d 912, 914–915 (4th Cir. 1973) cert. denied, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974). In any case, assuming that individual questions of reliance are presented, from the present record it appears that they will not predominate so as to make a class action inappropriate. See Green v. Wolf Corp., 406 F.2d 291 (2nd Cir. 1968), cert. denied, 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969). Insofar as a common plan or scheme affected the members of the proposed class, their individual injuries would be related and interdependent thus making a class action appropriate. See In re Penn Central Securities Litigation, 347 F.Supp. 1327 (M.D. Pa.1972); Dolgow v. Anderson, 43 F.R.D. 472, 488–491 (E.D.N.Y.1968).

■ There will also be individual differences with respect to the application of the statutes of limitation. The claim based on Section 12(2) of the 1933 Securities Act, 15 U.S.C. § 77l(2), must be brought "within one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence . . .." 15 U.S.C. § 77m. The claims based on Section 17(a) of the 1933 Act and Section 10b and Rule 10b–5 of the 1934 Act are governed by the two-year limitation period of Virginia's Blue Sky Law. Va.Code Ann. § 13.1–522. Newman v. Prior, 518 F.2d 97 (4th Cir. 1975); Maine v. Leonard, 353 F.Supp. 968 (W.D.Va.1973). As with the Section 12(2) claim, the two year limitation period does not begin to run until the fraud is either actually known or should have been discovered by the exercise of due diligence. Newman v. Prior, supra. However, the court cannot conclude that the individual questions of the statute of limitations will predominate and make a class action unmanageable.

Plaintiffs' complaint was filed on September 10, 1974, thus the only individual claims which would be completely barred would be those which were discovered or reasonably could have been discovered prior to September 10, 1972. In their amended complaint plaintiffs allege that they did not discover that they had been issued subordinated debentures until July, 1974. Although it is unclear from the present record when the promotional campaign began, plaintiffs refer to material events which occurred in December, 1972 and thereafter. It is therefore possible that defendant's affirmative defense of the statute of limitations may not be a major issue in this case, but even if significant individual issues are presented in this regard, the predominant issue is whether defendants engaged in a course of fraudulent conduct which resulted in the sale of subordinated debentures to the members of the proposed class. The statement in Lamb v. United Security Life Co., 59 F.R.D. 25 (S.D.Iowa 1972) with regard to a similar objection to class certification bear repeating here:

It has never been the rule that all issues must be identical for all mem-

bers of the class. So long as it is possible to say, as it is here, that the economy of time, effort and expense, as well as the desirability of uniformity are greater than the burden of determining individual issues, the Court will allow a class action as the superior method. The prospect of remaining issues to be resolved by separate trials or other appropriate procedures, after common issues have been adjudicated, provides no particular deterrent in the mind of the Court. 59 F.R.D. at 34. The court therefore concludes that so far as the present record reveals, the requirement of the predominance of common questions is sufficiently met in this case.

The court is further of the opinion that a class action is the superior method for adjudicating this controversy. Plaintiffs allege that many individual class members own relatively small amounts of the subordinate debenture notes, and therefore as a practical matter the prospect of individual suits is not realistic. This factor strongly recommends class status for this lawsuit. *Escott v. Barchris Construction Co.*, 340 F.2d 731, 733 (2nd Cir. 1965), *cert. denied*, 382 U.S. 816, 86 S.Ct. 37, 15 L.Ed.2d 63 (1965). There is no indication that any members of the proposed class have proceeded with suits elsewhere, and this forum appears to be as convenient as any for purposes of adjudicating this case. Furthermore, this court cannot foresee any other methods than the proposed class action for fairly and efficiently adjudicating these claims raised on behalf of the class.

Defendants contend that this suit should not be concentrated in this court because Roanoke Industrial is in receivership in the Circuit Court of Chesterfield County and Diversified Mountaineer Corporation, the parent corporation of Roanoke Industrial, is in bankruptcy proceedings in Charleston, West Virginia. These proceedings are independent of the present suit with respect to plaintiffs' allegations. An adjudication of the allegations made in the present suit could not be had in these other forums. The court accordingly concludes that on the basis of the present record, a class action appears to be the superior method of proceeding with this lawsuit.

The court therefore certifies a class of plaintiffs consisting of those persons who purchased subordinated debentures during or after the promotional campaign described in plaintiffs' amended complaint. In view of the fact that the present record does not indicate the duration of this campaign or the extent to which individual questions may be presented, pursuant to Rule 23(c)(1) the class certification is made conditional and may be altered following further developments in the case. Because this case has been certified pursuant to Rule 23(b)(3), plaintiffs must provide notice of this litigation by mail to the identifiable class members and bear the entire expense of such notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Certain other claims have been raised by some of the defendants including the contention that plaintiffs have failed to join parties indispensable pursuant to Fed.R.Civ.P. 19 and the contention that plaintiffs cannot establish with reasonable certainty that they will suffer any loss because of defendant's conduct. On the basis of the present record these remaining claims cannot be determined and are therefore taken under advisement.

An order in accordance with this opinion shall issue.