August METGE et al., Plaintiffs,

v.

Robert BAEHLER et al., Defendants.

Civ. No. 76–213–1.

United States District Court,
S. D. Iowa, C. D.

Jan. 19, 1978.

L. R. Voigts, Jerry E. Williams, Don Muyskens, Roger L. Ferris, F. L. Burnette, II, John Shupe, Richard J. Sapp, Nyemaster, Goode, McLaughlin, Emery & O'Brien, Robert Van Orsdel, Des Moines, Iowa, for plaintiffs.

Lex Hawkins, Glenn L. Norris, Des Moines, Iowa, for defendant Beatrice Baehler.

Robert B. Scism, John R. Sandre, Keith E. Uhl, Scalise, Scism, Gentry, Brick & Brick, Des Moines, Iowa, for defendants Gustafson, Pigott, Rice, Bright, Sprengeler and Allen Loomis.

B. A. Webster, J. G. Fletcher, R. A. Gamble, Des Moines, Iowa, for defendant Bankers Trust.

Michael J. Miller, Des Moines, Iowa, for defendant Abe Clayman.

C. Carleton Frederici, Frank J. Carroll, Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, for defendant R. D. Needham.

James A. Jackson, John D. Lloyd, Des Moines, Iowa, for defendant Lloyd G. Jackson.

Lawrence E. Myers, Lee H. Gaudineer, Jr., John G. Black, John Guidicessi, Des Moines, Iowa, for defendant William S. Joseph.

Bruce G. Mountain, Des Moines, Iowa, for defendants John Fereday, Bonnie L. Weaver, Marlow Samuelson and Carl Redding.

Benjamin B. Ullem, Kermit S. Sutton, Ned A. Stockdale, Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, Iowa, for defendant Robert F. Boyt.

Robert Baehler, pro se.

Dewayne Trask, pro se.

Albert Moritz, pro se.

## MEMORANDUM OPINION AND ORDER

STUART, Chief Judge.

Plaintiffs' motion for class action certification came on for hearing before this Court on November 22, 1977, at 9:30 a. m. Appearing for plaintiffs were Messrs. Roger Ferris, Gerald Newbrough, F. L. Burnette, II, Richard J. Sapp, and Robert Van Orsdel. Arguing on behalf of the various defendants were Messrs. C. Carleton Frederici, Robert B. Scism, Ned Stockdale, Bennett Webster, and John G. Black. Having heard the oral arguments of counsel and examined the briefs and exhibits submitted, the Court now finds that plaintiffs' motion should be granted.

The Court would note that certain evidence which might be relevant to plaintiffs' and potential class members' substantive claims or the defenses thereto has been offered and received solely as it relates to the pending Rule 23 motion. Any reference to factual findings contained herein is for the limited purpose of Rule 23 issues and such findings are not binding on the parties or the proposed class in connection with their substantive claims or defenses. The present class action determination is not intended to indicate that the Court has any opinion regarding the merits of said claims or defenses.

### FINDINGS OF FACT

The instant law suit arises out of the financial demise of Investors Mortgage & Finance Co., a wholly owned subsidiary of Investors Equity, Inc., formerly known as Investors Equity of Iowa. Investors Mortgage & Finance Co. began selling securities known as "Thrift Certificates" to the general public within the State of Iowa in the spring of 1969. The first purchase was made on April 1, 1970, with most of the proceeds derived from subsequent sales transferred back to the parent corporation. Some of these proceeds were allegedly used either to (1) make payments to creditors of Investors Equity and/or its affiliates; (2) pay interest on and redeem other thrift certificates; or (3) finance highly speculative recreational real estate development ventures—all unbeknownst to certificate purchasers. The financial condition of the now defunct Investors Mortgage and Investors Equity deteriorated to the point that sales of thrift certificates were halted on May 10, 1974 (the last actual sale having been made on May 1, 1974) with bankruptcy following sometime thereafter.

The named plaintiffs, August Metge and Elizabeth B. Shepard, filed this action on June 30, 1976, alleging violations of § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities and Exchange Commission and numerous related state claims, including violation of Iowa Code § 502.6 (failure to register with the Securities Department of the State of Iowa); violation of § 713.24(2)(a) (false advertising); and common law fraud. Mr. Metge purchased a thrift certificate in the amount of $3,000, on or about July 3, 1973. Mrs. Shepard is the executrix of the estate of Helen Clark. Miss Clark purchased a $1,000 thrift certificate on or about October 22, 1973 and a $4,000 thrift certificate on or about November 15, 1973. Due to the insolvency of Investors Mortgage and Investors Equity, neither the face value nor the accrued interest on the outstanding certificates have been paid and they are now virtually worthless. Named plaintiffs allege there are 635 other individuals or successors-in-interest presently holding similarly unredeemed thrift certificates with a total face value of approximately $1,492,440.87. They comprise the proposed plaintiff class sought to be represented in this action pursuant to Fed.R.Civ.P. 23(b)(3).

Plaintiffs' complaint is directed against some nineteen (19) individual defendants who were all, for varying lengths of time throughout the class period, associated with Investors Equity and/or Investors Mortgage either as directors or corporate officers. Bankers Trust Company, the lone corporate defendant, made loans to Investors Equity, the parent corporation, from time to time throughout the class period. Plaintiffs claim that each defendant is implicated herein as a participant, aider-and-abettor, and/or co-conspirator in the alleged bail-out scheme and common course of conduct undertaken to defraud the plaintiff class. Bankers Trust allegedly involved itself by willingly and knowingly accepting money obtained in violation of Rule 10b–5 in order to reduce its outstanding loan balance.

The essence of the plaintiffs' § 10(b) and Rule 10b–5 class claims, as the Court understands it, is that the class was attracted to Investors Mortgage thrift certificates by one or more of a series of ads, which began running on June 27, 1970, primarily in the *Des Moines Register*. The principal promotional device utilized by Investors, these ads promised a high interest rate and stated, in substantially similar language, that the certificates were "unconditionally guaranteed" or "guaranteed" by the parent company, Investors Equity. The ads also represented that loans made by the company were either secured by real estate or that the proceeds therefrom were invested in real estate loans and development.

The gravamen of plaintiffs' complaint is that defendants failed to disclose certain critical details with a material bearing on the statements made in addition to making a number of overt misrepresentations. In other words, in order for the statement that the certificates were guaranteed by the parent company not to be misleading, the plaintiff class should also have been told of: (1) the highly speculative nature of the company's investments; (2) the true uses to which the proceeds were being put (i. e., uses other than real estate loans and development); (3) the true nature of Investors Mortgage and Investors Equity's business

(i. e., recreational real estate development); and (4) the true financial condition of the companies. Plaintiffs allege Investors Equity and its subsidiaries were operating at a loss and were either on the brink of insolvency or insolvent throughout the class period. Furthermore, plaintiffs claim that the statements regarding real estate as security or investments were either misleading or constituted misrepresentations when the four material facts set out above were omitted.

Class members purchased certificates in several different ways: (1) on the basis of the ads alone; (2) on the basis of an ad and oral communications; (3) upon an ad and written form letters supplied in response to an inquiry; (4) in response to an ad and individualized written responses; or (5) based upon a combination of (2), (3), and (4). The plaintiffs' principal contention seems to be, not that additional misrepresentations were made in the contacts following the ads, but, rather, that none of the contacts with company officers and directors—regardless of their nature—did anything to supply the material facts necessary to make the statements appearing in the ads, in light of the circumstances under which they were made, not misleading.

Defendants take issue with plaintiffs' factual recitation, resisting what they apparently view as erroneous blanket assertions of wrongdoing over the entire proposed class period. They primarily argue that Investors Equity and its subsidiary, Investors Mortgage, were solvent and profitable at least through fiscal year 1970, as indicated by the companies' consolidated annual reports. Only when they began investing in recreational real estate (Lake Panorama at Panora, Iowa and Lake Wappapello in Missouri) in 1971 did financial difficulties surface, due at least in part to "rampant inflation, an oil crisis, [and] tight money". See Brief of Certain Defendants in Support of Their Resistances to Plaintiffs' Application to Maintain a Class Action, at 6.

## CONCLUSIONS OF LAW

In order to achieve class action designation under Fed.R.Civ.P. 23(b)(3), plaintiffs must first meet the prerequisites of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. Defendants claim that none of these conditions have been satisfied. The Court, however, is convinced that plaintiffs do, in fact, meet these threshold criteria to class action consideration.

### Numerosity

■ Defendants correctly argue that by definition an essential—although unenumerated—prerequisite to the maintenance of a class action is the existence of a class. However, they seek to advance an unduly restrictive interpretation of that requirement. At this early stage of the proceedings the Court is primarily concerned only with whether an identifiable plaintiff group exists which can be reasonably defined in actual practice. 7 Wright & Miller, Federal Practice & Procedure, § 1760 at 579–84 (1972); 3B Moore's Federal Practice ¶ 23.04, at 23–251 (2d ed. 1977). The Court is satisfied that "all persons or legal entities having an ownership interest in one or more Thrift Certificates and Guarantee Bonds" sufficiently delineates the plaintiff class, subject to further refinement pursuant to 23(c)(1).

■ Given that, the Court finds no great difficulty in determining that the proposed plaintiff class is "so numerous that joinder of all members is impracticable". Fed.R. Civ.P. 23(a)(1). Plaintiffs state that the proposed class consists of approximately 635 purchasers or their successors-in-interest who presently hold 848 thrift certificates and accompanying guarantee bonds. Their claims are relatively small (estimated at an average of $3,990.48 per family), making it financially difficult or implausible for them to pursue individual actions. Joinder is further made impracticable by the fact that class members are geographically distributed across Iowa and several other states. See, e. g., *Miller v. Central Chinchilla Group, Inc.,* 66 F.R.D. 411, 413 (S.D.Iowa 1975).

### Commonality

■ Although defendants strenuously deny the existence of questions of law or fact common to the class, the Court, for purposes of this action, believes there are sufficient common questions to satisfy its requirements. Defendants make much of the fact that the sixteen (16) ads run by Investors Mortgage between June 27, 1970 and April 28, 1974 varied in several respects; for example, some ads represented that the thrift certificates were "guaranteed" while others promised they were "unconditionally guaranteed" by the parent company; the first eight ads indicated that "[a]ll loans made in the company are secured by real estate", the last eight stated that "[p]roceeds are invested in real estate loans and development"; several invited further inquiry, while others did not; two solicitations described Investors' involvement in real estate development and management projects, the remaining fourteen did not. Hence, they argue the requisite "meaningful common writing" does not exist. The Court does not agree.

Although the ads upon which plaintiffs base their § 10(b) and 10b–5 claims were not identical in all respects and covered a substantial span of time during which Investors Equity and Investors Mortgage were experiencing increasingly severe economic difficulties, the Court finds that the representations made and material facts omitted are substantially the same. The similarities are sufficient to create questions of fact and law common to the proposed class.

> Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit. *Blackie v. Bar-*

*rack,* 524 F.2d 891, 902 (9th Cir. 1975) (alleged misrepresentations based on some 45 documents issued over a 27-month period) and cases cited therein. See also Advisory Committee on Rule 23, Proposed Amendments to the Rules of Civil Procedure, 39 F.R.D. 69, 103 (1960).

The Court does acknowledge that, since plaintiffs base the alleged violative omissions and misrepresentations on the affirmative statements in the ads, the class period should commence with the first publication of the ad, i. e., June 27, 1970. This will, of course, preclude from the certified class of "all persons or legal entities having an ownership interest in one or more Thrift Certificates and Guarantee Bonds" those who purchased before that date.

### Typicality

■ Based on the assertion that the only conceivable class in this action consists of that group of thrift certificate purchasers who bought on the strength of the ads alone, defendants argue that the claims of the named plaintiffs are not typical of the class. The Court does not believe their contention has merit, although it agrees that the typicality requirements of 23(a)(3) raise more complex factual considerations than those heretofore encountered.

In making its determination that the named plaintiffs' claims are typical of the class, the Court starts from the premise that Rule 23(a)(3) "does not pose a very substantial barrier to maintenance of a securities fraud class action". *Miller v. Central Chinchilla Group, Inc.,* supra, at 414. Rather than demanding proof of the existence of identical claims, Rule 23(a)(3) requires only a showing that the representative plaintiffs' interests are not antagonistic or in conflict with the class as a whole. *Cannon v. Texas Gulf Sulphur Co.,* 47 F.R.D. 60, 63 (S.D.N.Y.1969); *Vernon J. Rockler & Co., Inc. v. Graphic Enterprises, Inc.,* 52 F.R.D. 335, 340 (D.Minn.1971); *Kesler v. Hynes & Howes Real Estate, Inc.,* 66 F.R.D. 43, 47 (S.D.Iowa 1975). Under this permissive approach various courts have held that the typicality requirement may be satisfied even though varying fact patterns support the claims or defenses of class members, as here. See, e. g., *Gerstle v. Continental Airlines, Inc.,* 50 F.R.D. 213 (D.Colo.1970); *State of Iowa v. Union Asphalt & Roadoils, Inc.,* 281 F Supp. 391, 401 (S.D.Iowa 1968), affirmed on other grounds, 409 F.2d 1239 (8th Cir. 1969).

Mr. Metge, his interest piqued by an ad, drove to the Des Moines offices of Investors Mortgage and, after conversing with Bea Baehler, one of the defendants, regarding Investors Mortgage's investment policy, purchased his certificate. According to Mrs. Shepard, the decedent Miss Clark purchased her initial certificate on the basis of an ad alone. See Deposition of Elizabeth G. Shepard, filed June 24, 1977. Her second purchase followed the receipt of a form letter from Investors Mortgage on October 29, 1973 containing information she had apparently requested. See Reply Brief in Support of Plaintiffs' Application for Order Requiring Maintenance as Class Action, Exhibit C, Pattern Thrift Certificate Inquiry Responses. Defendants seem to feel that as Metge and Clark presumably relied on oral and written representations outside the ads, plaintiffs are not suitable class representatives. The Court does not agree. Together Mr. Metge and Mrs. Shepard, as Miss Clark's executrix, represent the three major possible plaintiff groupings. The fact that other class purchases were not made in mirror fashion cannot be deemed fatal where, as here, the underlying claims are based on an alleged common course of operative facts, a common writing in the form of essentially similar advertisements inviting investment, and a common legal allegation of fraud and misrepresentation. Every class member herein shares with the representative plaintiffs a mutual interest in establishing the existence and materiality of those misrepresentations that overrides any individual conflicts. See *Lamb v. United Security Life Co.,* 59 F.R.D. 25, 29 (S.D. Iowa 1972); *Kesler v. Hynes & Howes Real Estate, Inc.,* supra; *Blackie v. Barrack,* supra at 909.

■ Defendants also argue the named plaintiffs' claims are not typical because they purchased relatively late in the proposed class period (July 3, 1973; October 22, 1973; and November 15, 1973) when the companies were in an undisputably deteriorating condition. Depending upon the proof adduced on the merits, a shortening of the class period or the creation of subclasses may be called for in the future. However, the Court does not presently perceive a distinction or conflict of interest which would make the representatives' claims atypical and believes logic and efficiency would be served by allowing these plaintiffs to proceed. See *Blackie v. Barrack,* supra, 524 F.2d at 904; *Green v. Wolf Corp.,* 406 F.2d 291, 299 (2d Cir. 1968); cert. denied, *Troster, Singer & Co. v. Green,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969) (named plaintiff who purchased stock after issuance of last prospectus allowed to represent those who purchased prior).

### Representation

■ Finally, in order to satisfy Rule 23(a)(4) plaintiffs must demonstrate that they "will fairly and adequately protect the interests of the class". In large part this raises issues previously considered herein, particularly with regard to typicality, i. e.: (1) whether the interests of the named plaintiffs are coextensive with the interests of the entire class, (2) whether said interests are antagonistic, and (3) whether the quality of representation is adequate (with reference to the competence of legal counsel and the interest of the named parties). 7 Wright & Miller, supra, §§ 1765–69, at 615–57. Since the Court is persuaded that named plaintiffs have typical claims, it is unimpressed with defendants' contention that plaintiffs do not satisfy Rule 23(a)(4), based as it is on allegations of conflicting interests. This lawsuit has been vigorously prosecuted for well over one year and named plaintiffs have indicated both the financial responsibility and willingness to diligently pursue it to its conclusion. Hence, the Court finds the representative plaintiffs are and will continue to fairly and adequately protect the interests of the class.

With the initial hurdle of Rule 23(a) overcome, the Court must now determine whether plaintiffs have met the requirements of 23(b)(3) which provides:

> [A]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition . . . (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The rule further outlines several pertinent factors to be considered in making the above findings:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

### Predominance

■ Related to the commonality aspect of 23(a)(2), but not so easily resolved in the instant case, is the requirement that questions of law or fact common to the class predominate over issues relating solely to individual plaintiffs. In essence, the predominance test represents "an attempt to achieve a balance between the value of allowing individual actions to be instituted so that each person can protect his own interests and the economy that can be achieved by allowing a multiple party dispute to be resolved on a class basis". 7A Wright & Miller, supra, § 1777 at 47. Rule 23(b)(3) does not demand identity or uniformity of all issues as to all members of the class in order to find predominance. As long as the balance has been struck in favor of issues common to the class, the Court

should not be deterred in granting class action status by the prospect of separate trials to adjudicate remaining individual issues. *Lamb v. United Security Life Co.,* supra, at 34; *Esplin v. Hirschi,* 402 F.2d 94 (10th Cir. 1968), cert. denied, 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969).

Plaintiffs' federal securities violations claims stem from allegations that defendants engaged in a conspiratorial course of conduct furthered by material omissions and nondisclosures designed to defraud thrift certificate purchasers. All defendants are claimed to have actively taken part in this common fraudulent scheme thereby incurring an affirmative duty of disclosure.

Defendants engage, quite appropriately, in an extended discussion of the elements plaintiffs must prove to establish their substantive claims in order to determine whether common legal or factual questions predominate over individual questions. See *Trecker v. Manning Implement, Inc.,* 73 F.R.D. 554, 560 (N.D.Iowa 1976). Although they also explore plaintiffs' pendent state statutory and common law claims, the Court will primarily focus upon and analyze their arguments in relation to the alleged § 10(b) and Rule 10b–5 violations. Defendants emphasize plaintiffs' burden to establish a duty of disclosure in connection with their § 10(b) claims. They assert that, with regard to that controlling issue, individual questions will predominate since no common duty exists among the defendants to any particular purchaser or class of purchasers. The presence of widely fluctuating factual considerations and divergent defenses among the defendants is seen as further undermining the predominance of class issues relating to the controlling person, aiding and abetting, and conspiracy claims. Contrary to plaintiffs' allegations, defendants contend there is no common nucleus of operative facts or common scheme based on conspiracy and nondisclosure. They argue that since Investors Equity and Investors Mortgage were solvent at the outset of the class period, as reflected in their financial statements, facts material during the latter half of the period (1973–74) may not have been so at the beginning (1971–

72). They dismiss the central issue of law or fact—the existence of a conspiracy—as totally unsubstantiated and hence not predominant, relying heavily on this Court's ruling in *Brody v. R.G. Dickinson & Co.,* Civil No. 73–300–2 (unpublished, S.D.Iowa 1975). Based on the assertion that the ads do not constitute a common writing, defendants further argue plaintiffs cannot establish a common causal nexus because there was no common reliance.

■ The Court is satisfied, however, that plaintiffs' allegations of conspiracy and material omissions and nondisclosures common to the class are sufficiently predominant to warrant class action certification. Stepping back to survey this action from its broadest perspective, it is clear that the primary questions to be resolved are whether a conspiracy to defraud existed and whether defendants pursued a common course of material nondisclosures and omissions in furtherance of that scheme in violation of the federal securities laws. Individual disparities in the communications received and varying degrees of individual knowledge among class members cannot be said to outweigh these issues which bear upon each and every potential plaintiff. See *Esplin v. Hirschi,* supra, at 99–100; *Mills v. Roanoke Industrial Loan & Thrift,* 70 F.R.D. 448, 453 (W.D.Va.1975); *Friedlander v. City of New York,* 71 F.R.D. 546, 549 (S.D.N.Y.1976).

The foregoing should not be construed in any way to relieve potential class members from the burden of proving all elements essential to recovery. If it should later appear that certain issues cannot be adequately handled within the confines of a class action, the Court can and will modify and limit the lawsuit to those issues capable of class resolution. There will undoubtedly be elements of recovery which will raise individual issues, such as whether a particular individual is a member of the class, relied on the ads, or sustained damages in a particular amount. Those matters can be resolved in an individualized manner. See *Green v. Wolf Corp.,* supra, at 301; *Blackie v. Barrack,* supra, at 905–08; *Mills v. Roa-*

noke Industrial Loan & Thrift, supra; Brennan v. Midwestern United Life Insurance Co., 259 F.Supp. 673, 684 (N.D.Ind. 1966); 286 F.Supp. 702 (N.D.Ind.1968); affirmed, 417 F.2d 147 (7th Cir. 1969).

■ It may be that the form letters received by certain class members contain additional misrepresentations which will ultimately call for the creation of subclasses pursuant to Rule 23(c). Oral conversations and individual letters may also be relevant insofar as they demonstrate defendants' failure to remedy the alleged omissions. The Court would be remiss if it did not indicate its current disinclination to admit such extraordinary written and/or oral statements into evidence, believing, as it does, that such additional misrepresentations, whether written or oral, are not relevant to the specific class claims outlined above. Since they were made on an individualized basis to members of the class, they would probably be more prejudicial than relevant to the issues of intent or common scheme. Accordingly, plaintiffs should consider drafting the notice to alert potential class members of the possibility of such an exclusionary ruling by the Court in order to afford them the opportunity to opt-out if they wish to rely on individual representations in a personal suit.

Other arguments, among them issues relating to standing, statutes of limitations, and certain factual allegations, raised by defendants herein can only be deemed premature at the class action certification stage. As was aptly stated in Lamb v. United Security Life Co., supra, at 35, "[T]he court has no intention, in making a Rule 23 determination, of adjudicating whether certain representatives of the class have a cause of action, or a possibility of prevailing on the merits, or whether they are barred by the statute of limitations, by a weakness in their case, or for any other reason". Defendants will have an opportunity to contest plaintiffs' assertions of the companies' "dismal financial condition" at the appropriate time, just as they will be afforded a chance to refute the allegations of conspiracy and failure to fulfill their

duties of disclosure. See Mills v. Roanoke Industrial Loan & Thrift, supra, at 454–55 (statute of limitations claim).

### Superiority

■ The Court believes that in terms of efficiency, judicial economy, and fairness to the parties, a class action will provide the superior means of adjudicating this dispute. Although there may be some individual class members who will prefer to control the prosecution of their rights in separate actions due to the Court's anticipated restrictive approach toward the admission of extraordinary individual written and oral representations, the Court believes they will be in the minority. The Court is not presently aware of any suits pending before another court arising out of the subject matter of this action and foresees no particular problems in concentrating the litigation of these claims in this forum. The parties and their counsel are, in large part, located in Iowa. Fed.R.Civ.P. 23(b)(3)(A)–(D).

For the Court to deny class action certification would defeat one of the central purposes of Rule 23, namely "to provide a 'device for vindicating claims which, taken individually, are too small to justify legal action but which are of significant size if taken as a group' ". Lamb v. United Security Life Co., supra, at 31. Particularly here, in the context of a complicated federal securities lawsuit, it would significantly burden this large group of plaintiffs with relatively small claims to require each to appear and individually prosecute. Kesler v. Hynes & Howes Real Estate, Inc., supra, at 51.

### Defendant William S. Joseph

While the preceding discussion is intended to respond and apply to all defendants generally, the Court believes defendant William Joseph's arguments merit limited separate consideration.

Mr. William S. Joseph served as a director of Investors Equity from prior to 1969 to November 17, 1971 and secretary of Investors Equity from prior to 1969 to Au-

gust 25, 1971. He contends that the statute of limitations has run as to any thrift certificates purchased while he was connected with the company and that if any class is certified the class period should not commence prior to May 2, 1972, some time after he left the company.

Plaintiffs seek to impose liability on Mr. Joseph as an aider and abettor and a co-conspirator claiming that he would thus be liable for actions that took place after he severed his relationship with the companies. This contention apparently presupposes that Mr. Joseph not only had guilty knowledge and intentions, but a positive duty to speak out after leaving Investors Equity. Without suggesting a decision on the merits, the Court doubts that this is the law insofar as an unbenefitted individual is concerned. In addition, plaintiffs' allegations of conspiracy are minimal and, in the Court's opinion, not pleaded with the particularity required. See, generally, 15A C.J.S. Conspiracy § 24.

The Court shares Mr. Joseph's concern regarding the great expense that might be incurred in defending a class action of this size upon marginal allegations. However, the Court does not believe a motion for class action designation is the proper vehicle to decide statute of limitations questions or the propriety of including Mr. Joseph as a co-conspirator. In view of the interrogatories and requests for admissions he has pending, it appears that a motion for summary judgment might be in order in the not too distant future.

The Court is persuaded that a class action is a valuable tool to dispose of complicated cases involving large numbers of possible claims. The Court is also aware that it can become such a burden that justice may not be accomplished. The Court will, therefore, expect plaintiffs to properly plead an action in conspiracy. If there are no evidentiary facts to include Mr. Joseph as a member of such a conspiracy and no law to support such a claim this matter should be resolved as early as possible.

IT IS THEREFORE ORDERED that plaintiffs' motion for class action certifica-

tion shall be, and hereby is granted. The class shall initially be designated "all persons or legal entities having an ownership interest in one or more Thrift Certificates and Guarantee Bonds", with the class period to commence on June 27, 1970 (the date of the first thrift certificate ad) and run through May 10, 1974 (the date that sales of thrift certificates were halted).

IT IS FURTHER ORDERED that plaintiffs shall draft appropriate notice directed to all members of the class in accordance with the provisions of 23(c)(2). Special attention should be given the opt-out provision, alerting potential class plaintiffs to the possibility that individualized oral and written representations may be excluded upon trial. The proposed draft shall then be submitted to the Court for its approval prior to circulation to the class.