Robert G. WESTLAKE, et al.

v.

Alan ABRAMS, et al.

Civ. No. C78–555A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 26, 1983.

Christopher Knighton, Scheer & Elsner, Atlanta, Ga., Carl H. Hoffman, Hoffman & Hertzig, Coral Gables, Fla., for plaintiffs.

Arthur H. Rice, Leibowitz & Rice, Miami, Fla., and Charles M. Kidd and Woodrow Vaughn, Jr., Kidd & Vaughn, Atlanta, Ga., for defendant Charles P. LeMieux, III.

James A. Brian, pro se.

Thomas Labus, pro se.

Charles J. Hecht, pro se.

Robert Thornton and Ralph Levy, King & Spalding, Atlanta, Ga., for defendants Noel A. Gage, Lynn H. Schecter, George E. Bushnell, Jr., and firm Bushnell, Gage & Reizen.

Robert Waldheim, pro se.

John L. Taylor, Jr., McDaniel, Chorey & Taylor, Atlanta, Ga., for defendant Charles A. Wathen.

Michael D. Shuster, pro se.

Frank Post, pro se.

Bruce Berman and Warren C. Fortson, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for defendant Daniel J. Henry.

## ORDER

MOYE, Chief Judge.

Before the court in the above-styled civil action is (1) plaintiff Westlake's motion for approval of class notice; (2) plaintiff West-lake's memorandum of law in support of and defendant Bushnell, Gage & Reizen; Bushnell, Gage, Reizen, and Shechter's (hereinafter collectively referred to as "Bushnell, Gage & Reizen") memorandum of law in opposition to class certification of CFTC Act claims pursuant to the May 27, 1983 order; (3) the motions of defendants Henry and Bushnell, Gage & Reizen for entry of final judgment; and (4) plaintiff Westlake's motion for entry of default against defendant Michael D. Shuster and for deletion of his name from the service list. A detailed factual and procedural background of the case is set forth in the court's May 27, 1983 order, which is pub-

lished at 565 F.Supp. 1330. (The May 27, 1983 order will hereinafter be referred to as *Westlake II*[1]).

█ The court first addresses plaintiff Westlake's motion for approval of class notice which was filed on July 1, 1983, along with a proposed "notice of pendency of class action" form, an "exclusion election" form, and a list of names and addresses of class members. No objections to the documents have been filed, in fact, by telephone defendants Bushnell, Gage & Reizen informed the Court that they, after reviewing the documents, did not intend to file objections.[2] Upon perusal of the documents, the court GRANTS the plaintiff's unopposed motion for approval of the notice forms.[3] Plaintiff Westlake, therefore, is to present for signature the notice forms to the clerk of court within twenty (20) days and notice is to be sent to the members of the class within thirty (30) days of this order. Mr. Westlake, who has sought class certification of this case, is responsible for and must pay the costs of sending individual notice to class members whose names and addresses can be ascertained with reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–179, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *see In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1097 (5th Cir.1977), Fed.R.Civ.P. 23(c)(2).[4]

The court now turns to the CFTC Act issues. In *Westlake II*, the court reinstated for consideration the CFTC Act claims in light of the recent decision of *New York Mercantile Exchange v. Leist*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). (This case will hereinafter be referred to as *Curran* because *Leist* was consolidated with *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran* and the *Curran*

---

**1.** This court's order of November 26, 1980, was published at 504 F.Supp. 337 and will be referred to as "Westlake I."

**2.** It was J. Kevin Buster of King & Spalding who, after reviewing the documents, informed the court that Bushnell, Gage & Reizen did not intend to file objections to the proposed notice documents.

**3.** In the notice forms, the deadline for class members to send to the clerk of court the exclusion form is to be changed from September 1, 1983 to December 1, 1983.

**4.** While the plaintiff is under a heavy burden to notify the members of the class pursuant to Fed.R.Civ.P. 23, the plaintiff is to carry that burden within the deadlines set by this court.

case was the earlier docketed and the first listed of the consolidated cases.) The court granted defendants Henry and Bushnell, Gage & Reizen's motions for summary judgment on all of the CFTC Act claims on the basis that the alleged activities of those defendants did not fall within secondary liability of the commodity laws. 565 F.Supp. 1352. The attention of the court and the parties in the order and in the briefs was not directly upon whether an implied right of action exists under each and every asserted claim under the commodity laws, but the attention was focused upon the extent to which secondary liability would or would not apply to those defendants. The court, in fact, directed the plaintiff to brief further the commodities issues.

The plaintiff asserts two claims under the CFTC Act: (1) a claim under 7 U.S.C. § 6b (anti-fraud); and (2) a claim under 7 U.S.C. § 6k (failure to register with the CFTC). The plaintiff further asserts claims under the following rules promulgated by the CFTC: 17 C.F.R. §§ 32.3 (failure to register with the CFTC), 32.5 (failure to provide a risk disclosure statement), and 32.9 (anti-fraud).

The Supreme Court in *Curran* did not determine that a private action exists under each and every section of the CEA, as amended by the CFTC; rather, the Supreme Court held that an implied right of action exists specifically under §§ 4a, 7 U.S.C. § 6a; 4b, 7 U.S.C. § 6b; 5(d), 7 U.S.C. § 7(d); and 9(b), 7 U.S.C. § 13(b). *See Curran, supra*, 102 S.Ct. at 1848 n. 2. The holding in *Curran* was based primarily upon the fact that in 1974, when CEA was amended, there was a pre-existing cause of action recognized by courts under the specific sections at issue in *Curran*. Because the contemporary legal context at the time of the amendment included a private cause

of action under the specific sections and Congress did not expressly disapprove of the pre-existing law, Congress was presumed to have affirmatively intended to preserve the private remedy.

Defendants Bushnell, Gage & Reizen assert that no implied right of action exists under 7 U.S.C. § 6k because the provision was only added to the CEA at the time the CFTC Act was enacted, and thus could not have been part of the "contemporary legal context" in which Congress amended the CEA in 1974. Similarly, those defendants assert that no private right of action may be implied under the CFTC rules because the CFTC and the rules were non-existent at the time of the 1974 amendment.[5]

■ Mr. Westlake, the class representative, apparently concedes these points because he filed no opposition to Bushnell, Gage & Reizen's arguments. Therefore, the court need not further address the question of whether Congress intended a private action to exist under the asserted provision and rules. *See Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *J.E. Hoetger & Co. v. Asencio*, 558 F.Supp. 1361 (E.D.Mich.1983).[6] Accordingly, the plaintiff's claims under 7 U.S.C. § 6k and the CFTC rules are DISMISSED.

The Supreme Court in *Curran*, however, explicitly held that an implied private right of action exists under 7 U.S.C. § 6b. Therefore, the court must determine whether the plaintiff has shown that the claim is appropriate for class treatment. Title 7 U.S.C. § 6b provides:

It shall be unlawful (1) for any member of a contract market, or for any correspondent, agent, or employee of any member, in or in connection with, any order to make, or the making of, any contract of sale of any commodity in

---

**5.** Bushnell, Gage & Reizen also contend that no right of action exists under the CFTC rules because the CFTC Act, unlike the Securities Exchange Act of 1934, contains no provisions which make it unlawful to violate such rules. Those defendants point out that § 10(b) of the Securities Exchange Act of 1934 makes it unlawful to violate rules and regulations promulgated

by the SEC. Plaintiff Westlake files no response to this argument.

**6.** In a well reasoned opinion, Chief Judge Feikins concluded in *J.E. Hoetger & Co. v. Asencio* that no private cause of action, either express or implied, exists under § 6k of CEA. 558 F.Supp. 1361 (E.D.Mich.1983).

interstate commerce, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person, or (2) for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, on or subject to the rules of any contract market, for or on behalf of any other person if such contract for future delivery. is or may be used for (a) hedging any transactions in interstate commerce in such commodity or the products or by-products thereof, or (b) determining the price basis of any transaction in interstate commerce in such commodity, or (c) delivering any such commodity sold, shipped, or received in interstate commerce for the fulfillment thereof

(A) to cheat or defraud or attempt to cheat or defraud such other person;

(B) willfully to make or cause to be made to such other person any false report or statement thereof, or willfully to enter or cause to be entered for such person any false record thereof;

(C) willfully to deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract, or in regard to any act of agency performed with respect to such order or contract for such person; or

(D) to bucket such order, or to fill such order by offset against the order or orders of any person, or willfully and knowingly and without prior consent of such person to become the buyer in respect to any selling order of such person, or become the seller in respect to any buying order of such person....

The court in *Westlake II* directed plaintiff Westlake to submit a supplemental brief explaining why the commodity claims should be certified for class treatment. Mr. Westlake was directed specifically (1) to show how questions of law or fact common to the members of the class predominate over any affecting only individual members and (2) to explain how he intends to prove at trial the commodity allegations without resorting to individualized proof from members of the class. 565 F.Supp. 1352.

█ In his response, plaintiff Westlake asserts basically that because the court certified the federal securities law claims, it should certify for class treatment the CFTC claims. For the reasons discussed below concerning section 12(2) of the Securities Act of 1933, that argument alone is not convincing. Mr. Westlake, furthermore, fails to show how he would establish at trial those claims without individualized proof, as required by this court. Therefore, the court DENIES certification for class treatment of 7 U.S.C. § 6b, the only remaining claim under the commodities laws.

Defendants Bushnell, Gage & Reizen seek clarification of the holding in *Westlake II* concerning the securities claims. The court, therefore, explains that it only certified for class treatment the asserted claims under sections 2(1), 5, and 12(1); 15 U.S.C. §§ 77b(1), 77e, and 77*l* (1). The court held that the commodity futures options purchased by the class members could fall within section 2(1) without the plaintiffs relying on individualized proof by proving at trial that the Lloyd, Carr scheme provided James Carr with ultimate control over managerial or investment decisions. In addition, because there was no serious dispute, if any, that Mr. Westlake could prove at trial that Lloyd, Carr violated the registration requirements of sections 5 and 12(1) without resorting to individualized proof, the court approved for class treatment the securities claims under sections 2(1), 5, and 12(1).

In *Westlake II*, the court did not directly address the issue of whether Mr. Westlake's anti-fraud claim under section 12(2) should be certified for class treatment. Section 12 provides in pertinent part as follows:

Any person who—

(2) offers or sells security (whether or not exempted by the provisions of 77(c)

of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instrument of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77*l* (2).

■ Having reviewed the record in this case, the court concludes that plaintiff Westlake's section 12(2) fraud claim is inappropriate for class treatment in the instant action because Mr. Westlake has failed to convince the court that the fraud claim can be established at trial without individualized or standardized proof from each of the estimated 4,700 class members.[7] Generally, an action based substantially on oral rather than written misrepresentations cannot be maintained as a class action.[8] *Simon v. Merrill Lynch, Pierce, Fenner and Smith, Inc.*, 482 F.2d 880, 882 (5th Cir. 1973). *Accord, Blumenthal v. Great American Mortgage Investors*, 74 F.R.D.

508, 512 (N.D.Ga.1976); *Amswiss International Corp. v. Heublain, Inc.*, 69 F.R.D. 663, 671 (N.D.Ga.1975). The court in *Grainger v. State Security Life Insurance Company*, 547 F.2d 303 (5th Cir.1977), indicates that class treatment of a claim may be appropriate in the unlikely event that the plaintiff can show that "oral misrepresentations can be uniform, e.g., through the use of a standardized sales pitch by all company's salesmen." *Id.* at 307. Mr. Westlake in this action has had an opportunity but has failed to show that all of the Lloyd, Carr salesmen made identical or uniform pitches to each prospective customer. While the depositions of Robert Bala (Mr. Westlake's former Lloyd, Carr broker) or Charles Wathen (former manager of the Lloyd, Carr Atlanta office) show that salesmen had developed self-prepared, individual approaches to answer questions over the telephone, the depositions show that each conversation was different by nature because the telephone conversations unfolded according to the specific questions asked by the prospective customers. Consequently, the telephone conversations varied significantly from prospective customer to prospective customer. The court, therefore, reaffirms its holding in the May 14, 1981 order, 98 F.R.D. 1, that the record in this case lacks sufficient evidence to show that the alleged representations made by Lloyd, Carr salesmen, were uniform in content so as to present common questions of fact for trial.

In an alternative attempt to convince the court to certify the fraud claim for class treatment, plaintiff Westlake advances an interesting and novel theory. Basically, Mr. Westlake contends that nine material facts were omitted from Lloyd, Carr oral communications to the class members.[9]

---

7. The court notes that the plaintiff, in his September 1, 1981 memorandum, abandoned his argument in favor of class certification of the common law count because "there does not appear to have been any uniform consistent affirmative fraud that would allow class action treatment of the common law fraud count."

8. In his deposition, Robert G. Westlake, the representative of the plaintiff class, states that he

based his decisions to purchase his options solely upon oral communications with Mr. Bala, a former Lloyd, Carr broker.

9. Plaintiff Westlake asserts that the following statements are omissions of material facts which are necessarily common to the class:
   1. The necessity of unlikely large increases in the price of particular commodities in order to make any profits.

Mr. Westlake then argues that the listed material facts were necessarily omitted from the communications and that there is no need for individual injuries to prove the facts because a jury could determine that no reasonable investor would have invested in the commodity futures options with knowledge of the alleged material facts. This argument, however, is without merit because it is circular and begs the question by assuming that which is to be proved by Mr. Westlake.

Whether couched in terms of omission or nondisclosure of material facts in oral communication, individual proof or inquiry is required to the same extent as in cases of actual misstatement because the court or the jury in this case would have to determine exactly what was told to each purchaser about the Lloyd, Carr commodity futures options in order to establish precisely what was omitted or not disclosed. *See Goldstein v. Regal Crest, Inc.*, 17 Fed. R.Serv.2d 687, 689 (E.D.Pa.1973); *Ingenito v. Bermec Corporation*, 376 F.Supp. 1154, 1167 (S.D.N.Y.1974). The instant case is neither based upon uniform representations nor upon substantial written communications of Lloyd, Carr to the estimated 4,700 class members. Consequently, the section 12(2) anti-fraud claim asserted by Mr. Westlake is inappropriate for class treatment.

In conclusion and for the reasons set forth above, the court GRANTS plaintiff Westlake's motion for approval of class notice, directing Mr. Westlake (1) to present to the clerk of court for signature the notice documents within twenty (20) days and (2) to send notice to the class members within thirty (30) days of this order. The court DISMISSES all of plaintiff Westlake's CFTC Act claims except for 7 U.S.C. § 6b and DENIES class certification of that claim. The court EXPLAINS that in *Westlake II*, only sections 2(1), 5, and 12(1) of the Securities Act were certified for class treatment. The court determines that Mr. Westlake's motion for entry of default against defendant Shuster is MOOT because Mr. Westlake withdrew the aforesaid motion on September 15, 1983. Further, the court GRANTS the unopposed motions of defendants Henry and Bushnell, Gage & Reizen for entry of final judgment and DIRECTS the clerk of court to enter final judgment in favor of those defendants pursuant to Fed.R.Civ.P. 54(b) because there is no just reason for delay.

---

2. The actual costs of dealing with commodity options.

3. The Lloyd, Carr huge markup.

4. No such accounts as "Customer Segregated Accounts" existed and that Lloyd, Carr accounts were attached.

5. Options were not purchased until days or weeks after the order was placed, or in fact may never be purchased.

6. Even if purchases had not yet been made, investors would be denied the right to cancel orders on that basis.

7. Lloyd, Carr's enormous markup resulted in option prices three or four times larger than those of its competitors.

8. Only three percent of all investors made a profit on their investments and eighty-three percent of Lloyd, Carr's investors lost everything.

9. James A. Carr was an escaped convict using a pseudonym.