**Ersel G. SEILER, Jr., on behalf of himself and all others similarly situated, Plaintiff,**

v.

**E.F. HUTTON & COMPANY, INC., Defendant and Third-Party Plaintiff,**

v.

**TEXAS INTERNATIONAL COMPANY, George Platt, and Robert C. Gist, Third-Party Defendants.**

**Civ. A. No. 83–2706.**

United States District Court,
D. New Jersey.

Aug. 15, 1984.

Hersh Kozlov, Cherry Hill, N.J., and Greenfield & Chimicles by Richard D. Greenfield, Carole A. Broderick, David B. Zlotnick, Haverford, Pa., for plaintiff.

Philip Stephen Fuoco, Haddonfield, N.J., and Barrack, Rodos & Bacine by Leonard Barrack, Daniel E. Bacine, Philadelphia, Pa., for defendant E.F. Hutton Co.

Lowenstein, Sandler, Brochin, Kohl, Fisher, Boylan & Meanor by Matthew P. Boylan, Lee Hilles Wertheim, Roseland, N.J., and Seyfarth, Shaw, Fairweather & Geraldson by Daniel S. Greenfeld, Genevieve A. Harris, Robert J. Feinstein, Caroline Bienstock, New York City, for third-party de-

fendants Texas International Company, George Platt, and Robert C. Gist.

## OPINION

BROTMAN, District Judge.

This action is brought by a purchaser of securities against E.F. Hutton & Company, Inc. ("Hutton"), a securities broker, alleging violations by the defendant of § 10(b) of the 1934 Securities Exchange Act, Rule 10b–5 of the Securities Exchange Commission, and common law principles of fraud and misrepresentation. This court's jurisdiction is based on 15 U.S.C. § 78aa. On January 11, 1984, this court denied defendant's motion to dismiss, finding that plaintiff had stated an actionable claim against Hutton under the securities laws and under common law principles of fraud. *Seiler v. E.F. Hutton,* 584 F.Supp. 607 (D.N.J.1984).

After this court denied defendant's motion to dismiss, Hutton filed a third-party complaint for indemnity and contribution. Named as third-party defendants are the Texas International Company ("TEI") which was the issuer of the stock purchased by the plaintiff through Hutton, and two individual officers of TEI.[1] Hutton claims in its third-party complaint that if it is held liable to the plaintiff, it is in turn entitled to partial or total recovery from TEI.

Presently before the court are three motions. Defendant Hutton moves for an order adding TEI as a party defendant. Third-party defendant TEI moves for an order dismissing the third-party complaint. Plaintiff moves for class certification. The court will consider these motions seriatim.

## I. HUTTON'S MOTION TO ADD TEI AS A PARTY DEFENDANT

The court turns first to Hutton's motion to add TEI as a party defendant. Hutton hopes through this motion to realign TEI from its present position of derivative liability as a third-party defendant to a position as a co-defendant directly liable to the plaintiff.

TEI vigorously opposes this motion, arguing in part that Hutton is seeking improperly to manipulate Federal Rule of Civil Procedure 19 ("Rule 19") in an effort to make TEI—rather than Hutton—the focus of this lawsuit. Similarly, *plaintiff* opposes the addition of TEI as a direct defendant, arguing that this action is solely a lawsuit by an alleged defrauded investor against his brokerage firm, and that he should not be compelled to sue the issuer of the stock in question.[2]

The section of Rule 19 on which defendant Hutton relies in this motion provides as follows:

> (a) Persons to be joined if feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

Hutton argues that TEI has an "interest" in this litigation, since (in Hutton's view) an essential issue in this case is the accuracy of the factual statements made by TEI to Hutton. Hutton argues further that it should not have to bear "sole responsibility" for the plaintiff's damages. Finally, Hutton contends that TEI's absence from this lawsuit would create multiple and inconsistent relief or obligations.

---

1. All of these third-party defendants will hereinafter be referred to as "TEI".

2. Plaintiff emphasizes that "[t]he allegations [of his complaint] are almost exclusively directed at defendant Hutton's communications to plaintiff and the [purported] Class; there is virtually nothing directed toward TEI's communications to investors." Plaintiff's May 22, 1984 Memorandum of Law in Opposition to Defendant's Motion to Add Parties Defendant at 5.

■ The court rejects Hutton's arguments. As is obvious from the text of the section of the rule quoted above, the prerequisite for joinder under Rule 19(a)(2) is that the absent party "claim[ ] an interest relating to the subject of the action..." Rule 19(a); 3A Moore's Federal Practice § 19.07–1[2] at 19–129 (2d ed. 1984). TEI, the party sought to be joined, emphatically disclaims any interest in the subject matter of this litigation, which is in essence an action for damages by an allegedly defrauded purchaser of securities against a defendant brokerage firm.

Hutton's arguments in support of this motion fail to articulate coherently TEI's "interest" in the subject of this action within the meaning of Rule 19(a). Rather, its submissions reveal that the interest at stake in this motion is Hutton's, i.e., an interest in shifting the primary focus of this lawsuit from its own communications to its client, the plaintiff, to the communications of TEI to Hutton. Although the latter communications may prove relevant in Hutton's third-party action against TEI, they do not lead to a conclusion that this action should be refashioned—over the objections of the plaintiff—to a lawsuit against both the issuer and the broker of the stock purchased by the plaintiff.[3]

The court finds Hutton's other arguments equally unpersuasive. Even assuming that TEI has an "interest" in this litigation within the meaning of Rule 19(a), Hutton has made no showing that TEI cannot protect its interest by defending against Hutton's third-party complaint. Nor has Hutton shown that it risks double, multiple or inconsistent obligations to the plaintiff (or any third party) if TEI is not made a co-defendant. If Hutton is not found liable to the plaintiff, it will have no obligation to him at the conclusion of this lawsuit. If it is found liable to the plaintiff, and some of

that liability is appropriately shared by TEI, Hutton's third-party complaint for contribution will vindicate Hutton's rights as against TEI.

Hutton draws the court's attention to certain language in *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), wherein the Supreme Court noted that one of several factors to be considered in determining joinder under Rule 19 is the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or *sole responsibility* for a liability he shares with another." *Id.* at 110, 88 S.Ct. at 738 (emphasis supplied by the defendant). From this language, Hutton argues that Rule 19 provides an appropriate mechanism under the facts of this case for joinder of TEI so that Hutton does not bear "sole responsibility" for the plaintiff's injuries.

The court cannot accept defendant's efforts to extend the cited language in *Provident Tradesmen* to cover the facts of this case. First, *Provident Tradesmen* is a case which governs situations where a person who should be joined under Rule 19(a) cannot be made a party. As explained above, Rule 19(b) is inapplicable to the facts of this case; Rule 19(a) is therefore not called into play. *See Field v. Volkswagenwerk AG*, 626 F.2d 293, 300 (9th Cir.1980). ("Rule 19(b) itself is applicable only if a person who could be joined under the provisions of Rule 19(a) cannot be made a party for some reason"). Second, even assuming that the "sole responsibility" language in *Provident Tradesmen* is somehow relevant, Hutton can vindicate its rights (if any) through its third-party complaint, thereby ensuring that it does not undeservingly bear sole responsibility for plaintiff's alleged injuries.

■ Despite Hutton's disclaimers to the contrary, the court believes that Hutton is

---

**3.** The court's decision to deny defendant's motion is influenced in part by plaintiff's emphatic opposition to this effort to realign the parties. Plaintiff seeks relief solely from Hutton, and objects to what he views as Hutton's efforts to "distort the essence of this action, which arises from the relationship of trust and confidence

between plaintiff and his broker, defendant Hutton." Plaintiff's May 22, 1984 Memorandum at 5. Although there may be appropriate circumstances to disregard the prerogative of a plaintiff in choosing defendants, *see McDonald v. General Mills, Inc.*, 387 F.Supp. 24, 38 (N.D. Cal.1974), such is not the case at bar.

merely trying to realign TEI as a party defendant because TEI is alleged by the plaintiff to have been a joint tortfeasor with Hutton. As this court ruled in *United States v. Price*, 523 F.Supp. 1055 (D.N.J. 1981), *aff'd*, 688 F.2d 204 (3d Cir.1982), however, "[t]he traditional rule is that one tortfeasor may not compel the joinder of other alleged tortfeasors. Rule 19 did not depart from that long-established principle." *Id.* at 1075 (citation omitted); *Picard v. Wall Street Discount Corp.*, 526 F.Supp. 1248, 1252 (S.D.N.Y.1981); *see also American Motor Inns, Inc. v. Holiday Inns, Inc.*, 521 F.2d 1230, 1244 n. 42 (3d Cir.1975); *United States v. A & F Materials Co., Inc.*, 578 F.Supp. 1249, 1260–61 (S.D.Ill. 1984).

Accordingly, defendant's motion to add TEI as a party defendant will be denied.

## II. TEI'S MOTION TO DISMISS THE THIRD–PARTY COMPLAINT

The court turns next to TEI's motion to dismiss Hutton's third-party complaint. In support of its motion, TEI argues, *inter alia*, that indemnification and contribution are unavailable to Hutton in this action, and that Hutton has failed to plead fraud with particularity, as required by Fed.R. Civ.P. 9(b) ("Rule 9(b)"). The plaintiff takes no position on TEI's motion to dismiss the third-party complaint.

■ TEI correctly argues that Hutton's claim for indemnification must be dismissed. The law is settled that no right to indemnity exists under the securities laws. "A securities defendant should not be permitted to escape loss by shifting his entire responsibility to another party." *Heizer Corp. v. Ross*, 601 F.2d 330, 334 (7th Cir. 1979). The 1933 and 1934 Securities Acts "do not provide for indemnification under any circumstances." *Stowell v. Ted S. Finkel Investment Services, Inc.*, 641 F.2d 323, 325 (9th Cir.1981).

Nothing in Hutton's submissions or arguments persuade the court to deviate from this settled rule of securities law. To the extent Hutton's third-party complaint seeks indemnification from TEI, it will be dismissed.

Turning to Hutton's claim for contribution, TEI quite candidly concedes that the federal courts have implied a right of contribution under § 10(b) and Rule 10b–5. Indeed, such a concession is inevitable, given the weight of authority that contribution is available. *E.g., Sirota v. Solitron Devices, Inc.*, 673 F.2d 566 (2d Cir.), *cert. denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); *Laventhol, Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672 (9th Cir.1980), *cert. denied*, 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981); *Heizer Corp. v. Ross, supra*, 601 F.2d at 332; *Kennedy v. Josephthal & Co.*, [1983–1984] Fed.Sec.L.Rep. (CCH) ¶ 99,204 (D.Mass.1983); *McLean v. Alexander*, 449 F.Supp. 1251 (D.Del.1978), *rev'd on other grounds*, 599 F.2d 1190 (3d Cir.1979); *Muth v. Dechert, Price & Rhoads*, 391 F.Supp. 935 (E.D.Pa.1975).

TEI urges the court that two recent Supreme Court decisions refusing to imply an action for contribution under federal antitrust and employment discrimination statutes compel the court to find that no cause of action for contribution should be implied under the securities laws. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (antitrust); *Northwest Airlines v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (employment discrimination).

■ The court declines to follow TEI's suggestion and deny Hutton an action for contribution. First, in each of the cases cited by TEI, the Supreme Court expressly limited its holding to the particular statutory scheme in question and expressed no view about the availability of an implied action for contribution under the securities laws. *Texas Industries, supra*, 451 U.S. at 640 n. 11, 101 S.Ct. at 2066 n. 11; *Northwest Airlines, supra*, 451 U.S. at 91 n. 24, 101 S.Ct. at 1580 n. 24. Second, as noted above, nearly all federal courts which have faced the question have implied a right of contribution under these circumstances.

This court agrees with the policy in these cases of allowing a securities defendant to shift an appropriate share of its liability to other wrongdoers through a third-party complaint for contribution. Finally, the court notes that the only lower federal court which seems to have explicitly considered the impact of *Northwest Airlines* and *Texas Industries* on an implied action for contribution under the securities laws rejected an argument identical to that urged by TEI. *In re National Student Marketing Litigation*, 517 F.Supp. 1345, 1348–49 (D.D.C.1981).

TEI asserts two other arguments in support of its motion to dismiss the third-party complaint. First, it argues that Hutton's pleading is fatally deficient in that it fails to allege on its face that Hutton and TEI were joint tortfeasors. Second, it argues that the third-party complaint fails to satisfy the pleading requirement of Rule 9(b).

■ The court rejects TEI's argument as to the sufficiency of Hutton's third-party complaint. A third-party complaint "must indicate that the third-party defendant is or may be liable to the third-party plaintiff for all or part of plaintiff's claims against defendant." 6 Wright & Miller, Federal Practice & Procedure, § 1453 at p. 289 (1971) (cases collected); *see, e.g., Novinger v. DuPont deNemours & Co., Inc.*, 89 F.R.D. 588 (M.D.Pa.1981). TEI's joint tortfeasor argument elevates form over substance. Hutton has attached the original complaint—which repeatedly alleges that Hutton and TEI are joint tortfeasors—to the third-party complaint, and has also expressly incorporated the original complaint by reference. Third-Party Complaint, ¶ 8. Reading the complaint and third-party complaint together, and taking all of their allegations as true for purposes of this motion to dismiss, the court finds that Hutton had adequately pled a right to contribution from third-party defendant TEI.

■ Similarly, the court rejects TEI's argument that the third-party complaint fails to plead fraud with sufficient particularity, in alleged violation of Rule 9(b). Rule 9(b) is not intended to abrogate the basic pleading requirements of Fed.R. Civ.P. 8(a). *Cottman v. Transmission Systems, Inc. v. Dubinsky*, 95 F.R.D. 351, 352 (E.D.Pa.1982). The Third Circuit has recently emphasized that "focusing exclusively on [the particularity] language [of Rule 9(b)] 'is too narrow an approach and fails to take account of the general simplicity contemplated by the rules.'" *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 100 (3d Cir.1983), *quoting* 5 Wright & Miller, Federal Practice & Procedure, § 1298 at p. 407 (1969). The court finds that the complaint and third-party complaint give the third-party defendant ample notice of the facts underlying plaintiff's action as well as the claims underlying Hutton's claim for contribution. TEI is therefore without doubt adequately advised "of the claim which [it] must meet". *Cottman, supra*.

■ Finally, the court notes that TEI asks in the alternative that the third-party complaint be severed from plaintiff's complaint against Hutton. The court will deny this application. The complaint and third-party complaint are intimately related. It is in the interest of judicial economy that they be heard together by the same trier of fact. *Accord, Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727 n. 7 (2d Cir.1981).

Accordingly, TEI's motion to dismiss Hutton's third-party complaint will be granted insofar as it seeks to dismiss Hutton's action for indemnification and denied insofar as it seeks to dismiss Hutton's action for contribution.

## III. PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Finally, the court turns to plaintiff's motion for class certification. Plaintiff purports to represent the class "of all persons other than defendant Hutton (including its present and former employees) who sustained damages in connection with their purchases of TEI securities from and through defendant Hutton during the period July 1, 1981 to May 25, 1982 ('the Class Period')." Affidavit of Richard D. Green-

field, Esquire, in Support of Plaintiff's Motion for Class Action Determination, ¶ 5. Both Hutton and TEI oppose plaintiff's motion for class certification, arguing that plaintiff has failed to show that the requirements for a class action outlined in Fed.R.Civ.P. 23 ("Rule 23") are satisfied in this case.

In order for this action to proceed as a class action, plaintiff has the burden of proving that this lawsuit meets all of the requirements set forth in Rule 23(a) and—in addition—that the action falls within one of the three categories in Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Rule 23(a) provides as follows:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff asserts that the relevant section of Rule 23(b) is subsection (b)(3), which provides in relevant part that the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

In connection with plaintiff's motion for class certification, considerable deposition testimony has been taken by the parties. The plaintiff, Ersel G. Seiler, Jr., has been deposed on five occasions. Three current Hutton employees have been deposed: Kenneth Catanella, plaintiff's personal stockbroker; Carl Morganstein, the manager of Hutton's branch office in Cherry Hill, New Jersey, where plaintiff Seiler was a client; and Elliott Goodfriend, the manager of Hutton's Philadelphia, Pennsylvania branch office. In addition, a deposition has been taken of George Sall, a former Hutton vice president, who is currently employed by the brokerage firm of Merrill, Lynch, Pierce, Fenner & Smith.

■ Before turning to the pertinent sections of Rule 23, the court emphasizes that the burden of proof on this motion rests with the plaintiff, who is the proponent of a class action in this case. 3B Moore's Federal Practice § 23.02–2 at 23–96 n. 35 (2d ed. 1984). Class actions may not be approved lightly. The Supreme Court has recently emphasized that a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).

The court will assume without deciding that three of the four prerequisites of Rule 23(a) are met in this case, i.e., numerosity, common questions of law and fact, and fair and adequate representation by the named plaintiff. The court's discussion below will therefore focus on Rule 23(a)(3), which requires "that the claims or defenses of the representative parties [be] typical of the claims or defenses of the class"; and on Rule 23(b)(3), which provides in relevant part "that the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members." These criteria are somewhat related in this case, where the proposed class representative alleges a uniform series of misrepresentations and omissions by a brokerage firm.

## A. The Deposition Testimony

The court's review of the deposition testimony taken in connection with this motion reveals the following relevant facts.

Plaintiff Seiler made his decisions to purchase shares of TEI relying on the repeated advice of his broker, Kenneth Catanella (e.g., Seiler Tr. 4/12/84 at 47–52; 4/24/84 at 69–72). Seiler had a tremendous amount of confidence in Catanella, and effected a substantial number of secu-

rities transactions through Catanella prior to his purchases of TEI stock (Seiler Tr. 4/27/84 at 384–91). In July 1981, Catanella began actively promoting TEI stock and sent Seiler unsolicited mailings about TEI (Seiler Tr. 4/24/84 at 69, 88). Catanella sent Seiler certain highly technical Hutton research reports authored by Hutton analyst Dan Rice which strongly recommended TEI securities; Catanella frequently attached personal typewritten or handwritten notes to these reports (Seiler Tr. 4/24/84 at 97–98). Catanella and Seiler engaged in numerous telephone conversations during which Catanella advised Seiler to continue purchasing TEI stock (Seiler Tr. 4/12/84 at 47–52; 4/17/84 at 188–89). Seiler did not understand most of the technical information in the reports about TEI's oil exploration projects (Seiler Tr. 4/17/84 at 190–98), but relied on Catanella's bottom line recommendations to purchase the securities (Seiler Tr. 4/24/84 at 69–72).

The depositions of the Hutton employees reveal that each broker made his own decisions as to whether to promote any particular stock, and whether to send their clients information on an unsolicited basis (Catanella Tr. at 27, 95–96; Morganstein Tr. at 107–110, 143–44, 162–63). There was no uniform Hutton policy on the advice of information to be given clients; there was no standardized sales pitch for TEI securities or for any other company's securities (Catanella Tr. at 96; Goodfriend Tr. at 53; Morganstein Tr. at 163). Each broker tailored his advice and recommendations to the needs and resources of individual clients (Catanella Tr. at 20–21, 26–27). Brokers did not necessarily rely on Hutton research reports in making recommendations and providing information to clients (Morganstein Tr. at 78–80, 135). Catanella actually relied in part on sources beyond Hutton's research reports in making his recommendations to Seiler to purchase TEI securities (Catanella Tr. at 26, 30, 32–33). Most of the contact between Hutton brokers and their clients takes place in individualized telephone conversations (Catanella Tr. at 26–27; Morganstein Tr. at 144, 163; Goodfriend Tr. at 52).

George Sall, a former Hutton vice president now working at Merrill Lynch, testified that the high interest he observed in TEI securities at Hutton was unparalleled in his ten years at Hutton (Sall Tr. at 37). He personally recommended TEI to nine or ten of his approximately 200 customers (Sall Tr. at 60). His testimony corroborated that of the current Hutton employees that each Hutton broker was not forced or directed to promote the securities recommended by Hutton's research department (*id.* at 85, 86); that contact between brokers and clients is predominantly maintained through personal telephone conversations and "one-on-one contact" (*id.* at 83–84); and that recommendations to clients are made on a highly individualized basis (*id.* at 62).

## B. Discussion

It is the general rule that an action based substantially on oral rather than written communications is inappropriate for treatment as a class action. *Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir.1973); *Westlake v. Abrams*, 575 F.Supp. 58, 61–63 (N.D.Ga. 1983); *McHan v. Grandhouche*, 99 F.R.D. 260, 266 (D.Kan.1983); *Seiden v. Nicholson*, 69 F.R.D. 681, 686 (N.D.Ill.1976); *accord*, 6 L.Loss, *Securities Regulation*, 3497 (2d ed. 1969 supp.) ("The propriety of a class action when misstatements are oral is generally to be considered doubtful").

▬ If the allegedly fraudulent oral communications were *standardized*, however, and essentially identical representations were made to all members of the proposed class, certification under Rule 23 may be permissible. As was stated recently:

> [C]lass treatment of a claim may be appropriate in the unlikely event that plaintiff can show that "oral misrepresentations can be uniform, e.g., through the use of a standardized sales pitch by all [the] company's salesmen."

*Westlake v. Abrams, supra,* 575 F.Supp. at 62, *quoting Grainger v. State Security*

*Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir. 1977). *Accord, Mulcahey v. Petrofunds,* 79 F.R.D. 272, 278–79 (S.D.Tex.1978); *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 334 (D.Minn. 1971); *see, e.g., Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 548 (E.D.Pa.1976) ("the oral statements were nothing more than the means by which the written contents of defendant's letter were conveyed to the plaintiff").

▆ It is part of the plaintiff's overall burden in this Rule 23 motion to demonstrate that the defendant's communications to the proposed class were uniform in nature. As noted in *Miller v. Central Chinchilla Group,* 66 F.R.D. 411 (S.D.Iowa 1975):

> In the absence of any *demonstrable standardized communications ... the nature of the representations made is a factual question which must be answered on an individual basis, plaintiff by potential plaintiff.*

66 F.R.D. at 416 (emphasis supplied). *See also Simon v. Merrill, Lynch, supra,* 482 F.2d at 883 ("[Plaintiff's] failure to prove any standardized representations by Merrill Lynch bars a class action whether it is based on Rule 10b–5 or the state common law.").

In situations such as the case at bar, where it is alleged that a brokerage firm or other investment 'counseling organization has defrauded a group of investors, the courts have generally denied class certification because of the highly individualized nature of the communications of the defendant's employees with their clients. *Simon v. Merrill, Lynch, Pierce, Fenner & Smith,* 482 F.2d 880, 882 (5th Cir.1973); *McMerty v. Burtness,* 72 F.R.D. 450, 455 (D.Mich.1976); *In Re Scientific Control Corporation Securities Litigation,* 71 F.R.D. 491, 501–05 (S.D.N.Y.1976) ("*Scientific Control*"); *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1166–67 (S.D.N.Y.1976);

*Moscarelli v. Stamm,* 288 F.Supp. 453, 462 (E.D.N.Y.1968).

▆ An excellent discussion of the problems in attempting to maintain a class action against a brokerage firm is found in *Scientific Control, supra,* a case factually analogous to the case at bar. Plaintiffs in that case hoped to create a class out of all Merrill Lynch customers who purchased through Merrill Lynch Securities of a certain company ("SCC") in an eighteen-month period in 1968–69. The plaintiffs proceeded on a theory that Merrill Lynch's account executives were conduits of information from the defendant's research department to its customers. 71 F.R.D. at 501. The court rejected plaintiffs' characterization of the defendants' conduct:

> [T]he depositions taken thus far reveal that the presentations made to each customer varied markedly. Account executives testified that they followed different practices in their dealings with different customers. For customers who showed greater interest or sophistication, the account executives would provide greater detail. To some customers, the account executives emphasized that SCC was being recommended by Merrill Lynch. Account Executive Theodore Boots testified that some of his customers purchased SCC after a telephone conversation with him but other customers asked to be mailed supporting information. Some account executives sent copies of the current wire flash as supporting information routinely to all customers who purchased SCC and others sent wire flashes more selectively.

*Scientific Control, supra,* 71 F.R.D. at 501 (footnote omitted).

The *Scientific Control* court also noted plaintiffs' claim that the defendant brokerage firm had a uniform recommendation for all of its clients, and that in making that recommendation it breached its duty of care and trust to those clients. Without expressing any opinion as to the merits of plaintiffs' claim,[4] the court rejected plain-

---

4. Similarly, the court expresses no opinion as to the merits of plaintiff's claims in the case at bar, a question that is irrelevant to a motion for

class certification. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). This opinion is directed

tiffs' arguments that class treatment was appropriate:

> The essence of plaintiffs' claim here is that Merrill Lynch had a uniform recommendation in the QRQ system at any given time which was based upon some information, whether or not it was adequate to support the recommendation then in effect. This claim is not susceptible of class treatment since we have found that account executives utilized the Research materials differently: some used materials other than those provided by Research, and that the representations made to customers varied considerably; some may have reflected accurately Research's thinking at that moment and some may not. As to each transaction, the triers of fact will have to determine what representations were made, what basis there was for the representation at the time it was made, and what efforts Merrill Lynch and the individual account executives made to ascertain and verify the information given.

71 F.R.D. at 505 (footnote omitted).

### C. Conclusions

■■■■ Applying these principles to the case at bar the court will deny plaintiff's motion for class certification.

*First,* the court finds that plaintiff Seiler has failed to demonstrate that his "claims or defenses [are] typical of the claims or defenses of the class." Rule 23(a)(3). His deposition testimony reveals a particularly close and trusting relationship with his broker Ken Catanella. His repeated purchases of TEI securities arose essentially from Catanella's recommendations. Catanella selected Hutton research reports and sent them on an unsolicited basis to Seiler, and sometimes personally annotated these reports. The two men discussed Seiler's indi-

vidualized investment needs before Seiler purchased TEI securities.

The plaintiff has not brought forward evidence that other similarly situated investors who were customers of Hutton brokers during the proposed "class period" received essentially identical communications from their brokers. To the contrary, the deposition testimony of Catanella and the other Hutton employees reveals that their communications to investors varied widely. Their conversations with their clients were thus in no sense merely "the means by which the written contents of defendant's [research reports] were conveyed to the plaintiff." *Sharp v. Coopers & Lybrand,* 71 F.R.D. 544, 548 (E.D.Pa. 1976).

■■■■ Another typicality problem arises from the fact that Seiler concededly did not understand much of the technical information contained in Hutton's enthusiastic research reports about TEI. Other members of the purported class may have comprehended the scientific data about TEI's oil exploration prospects and relied thereon in making investment decisions. Seiler's claims and the defenses thereto are potentially very distinct from those of other members of the proposed class who actually relied on the analysis in the research reports or on other sources, including the advice of their own brokers. *See Koos v. First National Bank,* 496 F.2d 1162, 1164 (7th Cir.1974) (differences in reliance may lead to unique defenses and preclude a plaintiff from representing a proposed class); *McNichols v. Loeb Rhodes & Co., Inc.,* 97 F.R.D. 331 (N.D.Ill.1982) (same). Diverse questions of reliance thus arise among class members and vitiate plaintiff's claim that he would be a typical member of the proposed class.[5]

---

*solely* toward the question of whether plaintiff Seiler has satisfied the requirements of Rule 23 and is entitled to class certification.

**5.** The court notes that plaintiff has intertwined a "fraud-on-the-market" theory of liability with his theory of fraudulent misrepresentations and omissions by a stockbroker. Specifically, plaintiff argues that Hutton distorted the market for

TEI securities and that he is a proper representative of those investors who relied to their detriment on the integrity of the market.

The court must reject plaintiff's theory for several reasons. Initially, the court seriously questions the relevance of a "fraud-on-the-market" theory to a lawsuit against a stockbroker rather than against the issuer of the stock. Such a theory is more appropriately invoked in

*Second,* even assuming that all four of the requirements of Rule 23(a) are met, the court finds that Rule 23(b)(3) is not satisfied. Specifically, the court is not persuaded "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

■■■ As discussed in detail above, class certification is generally denied where the defendant's alleged representations to the class are oral or otherwise personalized, and where the plaintiff has failed to demonstrate that the substance of the representations was standardized. *E.g., Simon v. Merrill, Lynch, supra; Westlake v. Abrams, supra; Scientific Control, supra.* This is because under these circumstances individual questions predominate, making the action inappropriate for class treatment.

The record developed in this case reveals a series of highly individualized presentations by Hutton brokers to their clients. It appears that these representations were more often than not oral, generally in telephone conversations. Brokers were not directed by Hutton to make a standard "pitch" about TEI securities. Instead, they selected individually the stocks they would recommend, the customers to whom they would make their recommendations, and the frequency and manner of their recommendations.

Although Hutton's research department produced a series of enthusiastic written reports about recommending TEI, the record does *not* indicate that these reports were uniformly disseminated by brokers to their clients. To the contrary, it appears that Hutton brokers chose on a case-by-case basis the reports they would dissemi-

nate and the customers to whom they would send this information. The written reports that were sent out were further individualized by brokers' personal annotations to their clients. "Since all purchasers did not receive the same written materials, there will be individual questions of fact concerning what written representations were made to each customer in connection with each purchase." *Scientific Control, supra,* 71 F.R.D. at 501 (footnote omitted).

For all of these reasons, plaintiff has failed to carry his burden of showing that class certification is appropriate under the particular facts of this controversy. Class treatment must therefore be denied.

An order incorporating the foregoing will be entered.

### ORDER

This matter having come before the court on the 15th day of June, 1984; and

The court having considered the submissions and arguments of the parties; and

For the reasons stated in the court's opinion filed this date,

It is on this 15 day of August, 1984, hereby

**ORDERED** that the motion by defendant E.F. Hutton & Co., Inc., to add parties defendant is **DENIED**; and it is

**FURTHER ORDERED** that the motion by third-party defendant Texas International Company to dismiss the third-party complaint is **GRANTED** in part and **DENIED** in part, as set forth in detail in the court's opinion filed this date; and it is

**FURTHER ORDERED** that plaintiff's motion for class certification is **DENIED.**

No costs.

---

actions against the issuer of securities when investors rely to their detriment on an expectation of the integrity of the market for the defendant's securities. *E.g., In re Ramada Inns Securities Litigation,* 550 F.Supp. 1127, 1131 (E.D.La.1982).

Even assuming that a class of investors exists which could somehow maintain a Rule 23 action against Hutton under this theory, the court is not persuaded that Seiler would be a proper representative of that class. First, the court

finds that Seiler's individualized reliance on Catanella's oral advice renders the typicality of his claims at best questionable. *See McNichols v. Loeb Rhoades & Co., Inc.,* 97 F.R.D. 331, 336–41 (N.D.Ill.1982); *Kline v. Wolf,* 88 F.R.D. 696, 700 (S.D.N.Y.1981). Second, as discussed at length in the text, the court finds that plaintiff has not shown that questions common to the proposed class predominate over questions affecting only individual members.