Daniel GLICK

v.

E.F. HUTTON & COMPANY, INC., et al.

Civ. A. No. 82–2449.

United States District Court, E.D. Pennsylvania.

June 14, 1985.

Timothy I. McCann, Philadelphia, Pa., for plaintiff.

Daniel E. Bacine, Leonard Barrack, Philadelphia, Pa., for E.F. Hutton & Co., Inc.

Reeder R. Fox, Philadelphia, Pa., for Centuri, Inc.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

### I

This case is currently before the court on plaintiff's motion for class action determination. Plaintiff Daniel Glick filed this securities fraud action alleging that defendant, in promoting the sale of stock of Centuri, Inc., "omitted to state certain facts and withheld certain information, and made numerous express and implied representations over a period of time, which statements contained certain omissions and misrepresentations of material facts." Plaintiff's motion for class action determination at 2. Plaintiff purports to represent the class of "[a]ll purchasers of the stock of Centuri, Inc., who purchased that stock from or through E.F. Hutton & Co., Inc. between September 1, 1981 and March 23, 1982." *Id.* Both defendant E.F. Hutton ("Hutton") and third party defendant Centuri, Inc. ("Centuri") oppose Glick's motion for class certification, arguing that plaintiff has failed to show that the requirements for a class action outlined in Fed.R. Civ.P. 23 are satisfied in this case. For the reasons set forth below, plaintiff's motion for class action determination will be denied.

In order for this action to proceed as a class action, plaintiff has the burden of demonstrating that this suit meets all of the requirements set forth in Rule 23(a) and, in addition, that the action falls within one of the three categories listed in Rule 23(b). *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). *See also Piel v. National Semiconductor Corp.,* 86 F.R.D. 357, 364 (E.D. Pa.1980). Rule 23(a) provides as follows:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiff claims that the relevant section of Rule 23(b) is subsection (b)(3), which provides in pertinent part that the court must find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

As was stated by Judge Brotman in *Seiler v. E.F. Hutton & Co., Inc.,* 102 F.R.D. 880, 885 (D.N.J.1984), "[c]lass actions may not be approved lightly. The Supreme Court has recently emphasized that a class action 'may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' *General Telephone Co. v.*

*Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)."

Two of the four prerequisites of Rule 23(a) are met in this case, i.e., numerosity, and common questions of law and fact; I will assume without deciding a third, adequate representation by the named plaintiff. Therefore, the court's discussion below will focus on Rule 23(a)(3), which requires "that the claims or defenses of the representative parties [be] typical of the claims or defenses of the class" and on Rule 23(b)(3), which provides in relevant part "that the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members." As in *Seiler, supra,* these issues are somewhat related in this case, where the proposed class representative alleges a series of misrepresentations and omissions by a brokerage firm. There follows a discussion of the relevant facts.

## II

On January 6, 1982, Hutton's research department published a "Special Situation Report" communicated to its brokers, in which it projected quarterly earnings for Centuri for the first quarter of 1982 of $.20 per share. This first quarter earnings forecast was reiterated in an "all wires" memorandum issued by Hutton on February 1, 1982. In a subsequent "all wires" memorandum, dated March 3, 1982, the first quarter earnings projection was revised downward to a $.06–.08 per share level. Plaintiff claims that the information contained in the March 3, 1982, all wires memorandum was not released to the public. He claims further that the misrepresentations and omissions upon which this suit is founded were made by Hutton's refusal to release the March 3, 1982 memorandum and in the January 6, 1982 Special Situation Report, in the February 1, 1982 all wires memorandum, and again during conversations between Glick and his broker

during which Glick's broker relayed the information contained in those documents.

Glick purchased 23,000 shares of Centuri stock on nine separate dates: 12/31/81, 1/4/82, 1/5/82, 1/8/82, 1/28/82, 2/23/82, 2/24/82, 3/1/82, and 3/10/82. Plaintiff was deposed with regard to these purchases. As his deposition testimony makes clear, plaintiff for the most part made these purchases as a result of oral communications with his stockbroker in which his broker gave him supposed "inside information" concerning Hutton's investigation and research of Centuri.

Glick testified that Centuri first came to his attention in December, 1981 when Leonard Segal called him about the Company.[1] Indeed, Glick acknowledged that he had never even heard of Centuri before his first conversation with Segal:

Q. "You had no information about the company or its stock prior to that phone call from Mr. Segal?"

A. "Correct."

Q. "By that I take it that you mean you were not aware of the company's existence, if we can put it that bluntly?"

A. "That's correct."

Glick Deposition at 169–170.

Glick testified that in this first call about Centuri, Segal "told me that he had seen an insider report that was being prepared by the analytical department of Hutton, that would be coming out, that was very highly recommending Centuri as a stock that had tremendous possibilities, that was a turnaround situation and that when the report became public that the stock should really do well." *Id.* When asked whether he believed that the report "contained information from the company that was not available to the general public," plaintiff responded: "I believe that Lennie [Segal] made me believe that this report—information known to E.F. Hutton that was not known to the general public." *Id.* Glick then testified that Segal told him "that an analyst they had was right on that compa-

---

**1.** The two names that arise most frequently in Glick's deposition are Leonard Segal, his stockbroker, and a "Mr. Novello," a Hutton analyst

whom Glick states Segal told him was investigating Centuri.

ny and was investing [sic] and been to the company and done a thorough operating and investigative report and recommended that company very highly." Glick Deposition at 39. Being more specific about this first conversation concerning Centuri, Glick stated "he [Segal] said that the stock was a turnaround situation, had recently become a—where it had losses in prior years, they had turned around in the corner, they started to make money and the projections were they were going to quadruple their profits in the next year." Glick Deposition at 40. Glick specifically testified that it was as a result of his first telephone conversation with Segal that he made his initial purchase of Centuri stock. *Id.* at 44, 77. His subsequent purchases of January 4, 5, and 8, 1982, were also made as a result of conversations [2] with Segal. Indeed, Glick did not receive any written materials from Hutton relating to Centuri until after these dates. The first written material Glick received about Centuri was the January 6, 1982 "Special Situation Report" which he received around January 12. ("It takes somewhere between one week for the mail to get through, sometimes.") Glick Deposition at 99–100.

After these first purchases of Centuri stock, plaintiff made additional purchases in late January, late February and early March 1982. Glick testified that he made his January 28, 1982 purchase after conversations with Segal and without the benefit of any written material from Hutton about Centuri. *Id.* at 185. Glick also testified that he purchased 2,000 additional Centuri shares on February 23, 1982 and 4000 shares again on February 24, 1984, because of oral conversations with Segal. Segal gave him "information that Mr. Novello [the Hutton analyst] was going down to do another research analyst [sic] of the firm and that the earnings would be coming up and that they would be very favorable." Glick Deposition at 187. Glick specifically said that it was a result of Segal telling him about Novello's plans to travel to Florida to visit Centuri and what Novello had

indicated he thought his findings would be after the trip that "influenced me to purchase more securities." Glick Deposition at 187–188. He also based these purchases on the information contained in the January 6, 1982 Special Situation Report as reiterated in the February 1, 1982 all wires memorandum. *Id.* at 101.

Glick's deposition testimony is inconclusive regarding the specific impetus for his purchases of Centuri stock in March of 1982. It does, however, reveal that his overall motivation for purchasing Centuri stock was the "inside" information that Glick received from Segal which was not contained in any written document. *Id.* at 176–79. Thus, at the very least a substantial portion of Glick's case deals with oral communications.

### III

"It is the general rule that an action based substantially on oral rather than written communications is inappropriate for treatment as a class action." *Seiler v. E.F. Hutton & Co., Inc., supra,* at 888. *See also Simon v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 882 (5th Cir.1973); *Westlake v. Abrams,* 575 F.Supp. 58, 61–63 (N.D.Ga.1983); *McHan v. Grandbouche,* 99 F.R.D. 260, 266 (D.Kan. 1983); *Seiden v. Nicholson,* 69 F.R.D. 681, 686 (N.D.Ill.1976); *accord* 6 L. Loss, *Securities Regulation,* 3497 (2d ed. 1969 supp.)

"If the allegedly fraudulent oral communications were standardized, however, and essentially identical representations were made to all members of the proposed class, certification under Rule 23 may be permissible." *Seiler,* 102 F.R.D. at 888. As was also stated recently:

[C]lass treatment of a claim may be appropriate in the unlikely event that plaintiff can show that "oral misrepresentations can be uniform, e.g., through the use of a standardized sales pitch by all [the] company's salesmen."

*Westlake v. Abrams, supra,* 575 F.Supp. at 62, quoting *Grainger v. State Security*

---

**2.** After his first purchase of Centuri stock, Glick testified that he and his stockbroker Segal "would speak every day about Centuri," and this included the fact that Segal occasionally "called me on Saturday." Glick Deposition at 88.

*Life Ins. Co.*, 547 F.2d 303, 307 (5th Cir. 1977). *See also Sharp v. Coopers & Lybrand*, 70 F.R.D. 544, 548 (E.D.Pa.1976).

■ It is part of the plaintiff's overall burden in this Rule 23 motion to demonstrate that the defendant's communications to the proposed class were uniform in nature. *Seiler, supra*, at 889. As noted in *Miller v. Central Chinchilla Group*, 66 F.R.D. 411 (S.D.Iowa 1975):

> In the absence of any demonstrable standardized communications ... the nature of the representations made is a factual question which must be answered on an *individual* basis, plaintiff by potential plaintiff.

*Id.* at 416 (emphasis supplied). *See also Seiler v. E.F. Hutton & Co., Inc., supra.*

As noted by Judge Brotman, "[i]n situations ... where it is alleged that a brokerage firm or other investment counseling organization has defrauded a group of investors, the courts have generally denied class certification because of the highly individualized nature of the communications of the defendant's employees with their clients." *Seiler, supra*, at 889 (citations omitted).

An excellent discussion of the problems in attempting to maintain a class action against a brokerage firm is found in *Seiler v. E.F. Hutton & Co., Inc., supra*, which is factually analogous to the case at bar. Plaintiffs in that case hoped to create a class out of all E.F. Hutton customers who purchased through E.F. Hutton securities of a certain company ("TEI") in an eighteen month period in 1968–69. The plaintiff proceeded on a theory of fraudulent misrepresentations and omissions by a stockbroker. 102 F.R.D. at 890 n. 5. The court denied plaintiff's motion for class certification stating:

> The record developed in this case reveals a series of highly individualized presentations by Hutton brokers to their clients. It appears that these representations were more often than not oral, generally in telephone conversations. Brokers were not directed by Hutton to make a standard "pitch" about TEI securities.

Instead, they selected individually the stocks they would recommend, the customers to whom they would make their recommendations, and the frequency and manner of their recommendations. Although Hutton's research department produced a series of enthusiastic written reports about recommending TEI, the record does *not* indicate that these reports were uniformly disseminated by brokers to their clients. To the contrary, it appears that Hutton brokers chose on a case-by-case basis the reports they would disseminate and the customers to whom they would send this information. The written reports that were sent out were further individualized by brokers' personal annotations to their clients.

*Seiler v. E.F. Hutton & Co. Inc., supra* at 891 (emphasis in original).

■ In the instant case, plaintiff has failed to demonstrate the existence of any oral representations or omissions made to any members of the purported class, save himself. Glick has not brought forward evidence that other similarly situated investors, who were customers of Hutton brokers during the proposed class period, received essentially identical communications from their brokers. He would be hard pressed to do so, since he believed that he was the recipient of inside information. Glick has, therefore, failed to demonstrate that the substance of oral misrepresentations or omissions made to purported class members was standardized. Under "such circumstances individual questions predominate, making th[is] action inappropriate for class treatment under Rule 23(b)." *Seiler v. E.F. Hutton & Co., Inc.*, 102 F.R.D. at 891.

To the extent that plaintiff's motion is based on material omissions and/or misrepresentations allegedly contained in and with regard to the Special Situation Report and all wires memoranda, this court finds that Glick has failed to demonstrate that his claims are typical of the claims of the class. *See* Rule 23(a)(3). As in *Seiler*, Glick's deposition testimony reveals a particularly close relationship with his broker. His reported purchases of Centuri stock arose essentially from his broker's recom-

mendation. Thus, his case is not typical of other purported class members who would have relied strictly on the written documents or on *their* brokers different oral representations. Therefore, "[d]iverse questions of reliance thus arise among class members and vitiate plaintiff's claim that he would be a typical member of the proposed class."[3] *Seiler*, 102 F.R.D. at 890.

For all the reasons listed above, plaintiff's motion for class certification will be denied. An appropriate order follows.

---

**3.** It is unclear from the complaint as written whether plaintiff herein also proceeds against Hutton on a "fraud on the market theory." In his Memorandum in support of his motion for class certification he seems to so indicate. To the extent that Glick's complaint can be so read, this court embraces the holding and reasoning in that regard set forth by Judge Brotman in *Seiler*, 102 F.R.D. at 890 n. 5.